Zimmerman *v.* Pennsylvania Railroad, Appellant.

Argued May 8, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Simpson Kline* and *Charles M. Clement,* for appellant.—The jury, in defiance of the testimony of the plaintiff's own witness, an admittedly competent surgeon, the superintendent of a state institution, located in our midst, was permitted to render such a gross verdict that it impeaches their entire consideration of the case and goes to show beyond a reasonable doubt that the only thing that jury discussed was how much can we give this plaintiff and get away with it?

In giving to the jury the power of deciding whether or not the signals were given at a proper place, as controlled by the speed of the train set up by plaintiff alone, and not corroborated by a single witness, was receiving clearly negative testimony: Anspach v. R. R., 225 Pa. 528; Zotter v. R. R., 280 Pa. 14; Craft v. Hines, 272 Pa. 499; Haskins v. R. R., 293 Pa. 537.

The surroundings, the view, the photographs and all the testimony in this case establish the fact that, if we assume plaintiff did stop to look and listen, he must have seen the train approaching: Fuher v. Coal Co., 272 Pa. 14; Horan v. Davis, 274 Pa. 244; Mensch v. Direct. Gen., 274 Pa. 356; Winner v. Direct. Gen., 287 Pa. 288.

*Fred B. Moser,* for appellee.—The verdict was not excessive: Quigley v. R. R., 210 Pa. 162; Scott, Admrx., v. Express Co., 257 Pa. 25; Dziak v. Swaney, 289 Pa. 246; Petrie v. Kaufmann & Baer Co., 291 Pa. 211; Wilson v. Beef Co., 295 Pa. 168.

If the driver's view is only partly obstructed or shortened, the question whether he should have gone forward

to get a better view is for the jury: Razzis v. Ry., 273 Pa. 550; Hoffman v. R. R., 278 Pa. 246.

Positive evidence on the part of one witness that the train gave no signal and had no headlight, is sufficient to carry the question of defendant's negligence to the jury notwithstanding contradiction offered by defendant: Hugo v. R. R., 238 Pa. 594; Gibson v. R. R., 164 Pa. 142; Haverstick v. R. R., 171 Pa. 101; Rauch v. Smedley, 208 Pa. 175; Crowley v. R. R., 231 Pa. 286; Duffy v. Water & Power Co., 233 Pa. 107; Dobra v. Coal Co., 250 Pa. 313; Simons v. R. R., 254 Pa. 507; Thomas v. R. R., 275 Pa. 579.

Plaintiff's testimony was not negative but positive: Simons v. Ry., 254 Pa. 507; Knepp v. R. R., 262 Pa. 421; Mellon v. R. R., 282 Pa. 39.

In this case the court could, under no circumstances, direct the jury to find as a fact that a warning was given as the train approached the crossing. Thomas v. R. R., 275 Pa. 579.

OPINION BY MR. JUSTICE FRAZER, July 1, 1929:

This appeal is from the refusal of the court below to grant a new trial or enter judgment n. o. v., and from the entry of judgment upon the verdict. The action was instituted by plaintiff to recover damages for personal injuries he alleges were sustained through the negligence of defendant company. The jury returned a verdict in favor of plaintiff and awarded damages in the sum of $20,000.

We have given particular attention to the record of the case and as a result of that study have reached the conclusion that the verdict is excessive and not justified by the weight of the evidence relating to the nature and extent of the injuries sustained by plaintiff and to the question of the permanency of his incapacity to earn a livelihood in the future at his usual occupation or other profitable line of labor.

As we will direct a retrial of the case, we need give attention in detail only to the assignment of error against the judgment entered on the verdict, under which we may consider the matter of the excessiveness of the award, presented by defendant in its statement of questions involved. The interference in awards by juries is always undertaken by appellate courts with strict and serious regard for the ancient rule that justice is due alike to plaintiff and defendant; and, as was said by the present Chief Justice in Goldman v. Mitchell-Fletcher Co., 285 Pa. 116, 119, "while this court has always been disinclined to interfere with awards of juries sustained by the trial tribunal, yet where the facts demonstrate a verdict to be so plainly excessive in any part as to indicate that the jury has abused its powers, and that abuse is not remedied by the court below, it becomes our duty to act." This situation in our opinion exists in the case before us.

Plaintiff, aged twenty-one years at the time of the accident, drove, about midday, September 7, 1926, a motor truck in which he was the sole occupant, along a public highway in an open part of the country, descended a hill and reached defendant's railway over which the public road passed at grade. At this point the roadbed held two tracks, one used as a siding and the other as the main track. Plaintiff testified he stopped his truck 18 or 20 feet from the outer rail of the siding, which was the first track in front of him, neither saw nor heard an approaching train, then drove upon and over the two rails of the siding, reached and entered on the main track, and was almost instantly struck by the engine of defendant's oncoming passenger train. The truck was demolished and plaintiff seriously injured. He was cared for by the trainmen and immediately removed to a hospital, where he remained under treatment for 160 days.

The alleged negligence of defendant, as claimed by plaintiff, consisted in the excessive speed of defendant's

394

train, the lack of warning by whistle or bell from the engine, and the presence of two large freight cars on the siding at the west edge of the highway or crossing, the direction from which the train came, plaintiff claiming that, while these two cars did not obstruct his view of the track for several hundred feet toward the west before he drove upon the siding, they did obstruct his view when behind them and driving over the crossing.

As testified at the trial by the attending physician, plaintiff suffered a compound, crushed and complicated fracture of the tibia of the left leg, a compound simple fracture of the right leg and lacerations about the face. Operations were performed, and the legs incased in plates to unite the broken bones; at the proper time these were removed, and treatment continued, plaintiff's stay at the hospital covering, as above stated, a period of 160 days. Unquestionably the injuries were of a character requiring prolonged attention at the hospital, the pain acute and the progress of healing slow. At the time of the trial plaintiff walked with the aid of a crutch.

In summing up its reason for rejecting the motions for a new trial or for judgment n. o. v., the learned court below said: "We do not think that the verdict when viewed in the light of the above damages is 'so glaringly excessive' as to justify our interference." We are wholly unable to agree with that conclusion. It is not warranted or sustained by the facts as we find them in the record. Plaintiff was twenty-one years of age at the date of the accident and a strong, healthy, vigorous youth. He was first employed, when aged about 14 years, in a silk mill for five years; later worked in an automobile factory for seven months, receiving $35 a week. He then drove a hospital ambulance for a year and a half, receiving for such service from $70 to $80 a month, with room and board; then for two months drove a commercial motor truck, receiving for his services $30 a week; then for a time was employed by a baking company which paid him $30 a week, and, at the time the

accident occurred, was employed by another firm as a truck driver, his wages being $25 a week. It will be noted that this young man was not habituated to steady jobs, nor careful in securing work successively more profitable in wages, since when injured he was earning wages less in amount than he received at preceding employments. Asked at the trial what was the condition of his health at the period of the accident, he responded: "My health was always good." It was doubtless to the above recited facts that the trial judge meant to direct attention of the jury when he said in his charge: "In estimating damages under this item you have to regard his age, his probable length of life, his habits, his regularity of working and the period or time that such incapacity may continue." An instruction so clear as here given by the court should naturally arouse in the mind of a juror of even the most ordinary mentality, when trying to reach a conclusion as to the permanency or impermanency of disability in a case like the present, the necessity of giving proper attention to the evidence of both sides bearing upon these points. But, having carefully examined the convincing testimony relative to plaintiff's physical condition at the time of the trial, to the healing of his injuries and to the prospects of regaining within a short period his former earning power and the resumption of his usual labor, we are constrained to conclude that defendant's side of the case, on these phases, was not sufficiently considered by the jury. We must consequently, give attention here to that evidence. Naturally plaintiff suffered considerable pain before and particularly during the surgical operations. The broken bones must necessarily be joined together, small pieces of bone removed, the legs put in plates, and for many days the patient was unable to walk. Up to the time of the trial, June 7, 1927, he had performed no labor, and when asked on the witness stand if he could drive a truck, replied: "Not at present"; and the only apprehension he himself seems to have entertained as to the

permanency of the results of the injuries was his claim, that, due to the accident, one of his legs had become shorter than the other. His weight, as he testified, was 156 pounds before the accident, which was reduced considerably during his stay at the hospital, but at the time of the trial was 143 pounds.

It is clear that in this case it is the uncontradicted testimony of the attending physician, Dr. Reese, called by plaintiff, upon which we must rely as to the actual physical condition of plaintiff following the operations and after his discharge from the hospital; the doctor was superintendent of that institution and had treated plaintiff every day during his entire stay at the hospital. In reply to plaintiff's claim that at times since the accident his heart "kind of fluttered," the doctor testified that, except during the operations, the action of plaintiff's heart was normal and remained so, as established by examinations of that organ made practically daily. His appetite was always good. At the trial the physician's attention was called to a "ridge" or swelling on plaintiff's right ankle. The witness explained that it was only a lymphatic trouble, produced from lack of use of the leg, was not a permanent injury, that the more the leg was used the quicker it would disappear, and the ankle was "as good as ever." As to the assertion of plaintiff that one leg had become shorter than the other as a result of the injuries sustained in the accident, the physician was asked on direct examination: "Q. His left leg from the knee down is shorter than his right leg? A. No. Q. Is it not? A. No. Q. Do you mean to say that it is not? A. The x-rays show that. Q. The x-ray shows what? A. That it is not shorter. Q. Than the other leg? A. Yes, sir." Plaintiff testified to the presence of an ulcer on the leg, developed as a result of the injuries and which at the time of the trial was still discharging. Asked whether this would interfere with plaintiff's work if he secured employment, Dr. Reese said appellee should not do much

work until the open sore healed, but that within seven months at the most it would be thoroughly closed; that at the time of the trial he was forbidden walking, this restriction being imposed solely to allow the ulcer to heal, and that, after that result had been accomplished, plaintiff would be perfectly able to resume his occupation as truck driver. The doctor also testified in answer to plaintiff's counsel: "Q. You say that in the course of a few months this boy can drive a truck as good as ever? A. Yes, sir. Q. Well, do you mean to say that his legs will be as long as ever? A. In about six months......Q. And he will be able to do any kind of work the same as before the injury? A. Yes." Dr. Hawley, an expert in x-ray examination, also called as one of plaintiff's witnesses, testified that his pictures showed that the broken bones had reunited and healed, except that a small piece of dead bone remained in one of the areas of the injury.

We do not find ourselves able to place any other construction upon the above uncontradicted testimony than that no permanent disability has resulted from the injuries sustained by plaintiff, that his complete recovery within a short time is assured and that his former earning power will then have been regained. Considering then, on the one hand, all the factors relative to his injuries, the deprivation of wages during illness, the extent of pain and suffering, the hospital expenses amounting to $1,772.50, the loss of earning power which, according to the testimony, will continue to a very limited period in the future; and, on the other hand, the certainty of his complete recovery within less than a year, with the restoration of his capacity to pursue his usual or other occupation, and a full return of his former earning power within that time—considering these aspects of the case, as established by the evidence, we cannot but believe that the jury in granting the excessive award must have acted under the influence of unjustified motives or have grossly misapprehended or disregarded

the plain meaning and the clear information imparted by the testimony, and accordingly we deem it our duty to have the case submitted to another jury.

Inasmuch as the case is to go back for retrial, it may not be amiss to say that our examination of the testimony relating to the circumstances of the accident raises doubt as to conclusions of the learned court below in its opinion disposing of the motions for judgment n. o. v. and a new trial. Plaintiff testified positively that no whistle was sounded on the engine that collided with his truck. But we cannot easily disregard the testimony of seventeen witnesses, not all of them employees of defendant, who testified they heard the whistle; and if, as the court below holds, the vital question is not whether the whistle was blown, but whether it was blown at such distance from the crossing as to give plaintiff "sufficient and timely" warning of the approach of the train, we think it may be seriously questioned whether plaintiff has sustained the burden of showing negligence on the part of defendant in the matter of giving such warning. In both his statement of claim and in his testimony at the trial plaintiff declares no signal was given. But we find no grounds for disbelieving the evidence of the seventeen witnesses that they heard the whistle; and the fact that three or four of them said they heard only the quick "toots" almost immediately before the crash came, is offset by the presence of reliable testimony to the contrary, that the engineer whistled once on rounding the curve and a second time later, when he saw plaintiff's truck approaching the track ahead of him. Usually passengers in a train and uninterested persons seeing a train pass by, pay no attention to the customary signals sounded by an engineer; but quick, sharp and successive sounds from the whistle are invariably suggestive of peril or accident, and consequently are immediately noticed and remembered. It seems to us the idea that the engineer failed to give the usual warning at the regular whistling post some dis-

tance west of the crossing but only sounded it sharply when near the crossing and immediately preceding the impact of the engine with the truck, was too strongly stressed upon the jury by the court in its charge. This is an extremely important matter in the case, as connected with the charge of negligence imputed to defendant.

The judgment of the lower court is reversed and a venire facias de novo awarded.