Thirkell *v.* Equitable Gas Co. (et al.), Appellants.

Argued March 23, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Carl E. Glock,* with him *Reed, Smith, Shaw & McClay,* for appellant.—Under the circumstances, the verdict is so excessive that it violates the standard of damages laid down by the Supreme Court. In view of the age of the man and of his wife, the value of his property, his medical and funeral expenses, and his condition, even assuming total disability to do physical labor, the verdict exceeds bounds. At five per cent interest, and without using principal, the income exceeds $200 a month and exceeds the plaintiff's average earnings. The principal would purchase an annuity yielding more than $280 per month for the rest of his days. The verdict is unreasonable and shocking to the conscience.

*H. Fred Mercer,* with him *Harry E. McWhinney,* for appellee.—In this case, the verdict is $50,845.80. As verdicts go, that verdict, until you understood the facts, would appear to be high. But, it represents first, the death of a wife, thirty-eight years of age, and, secondly, the certain, but delayed, destruction of a man, forty-four years of age. It represents the loss of his home, the loss of his voice, and the eventual loss of his life. The verdict is therefore reasonable.

*Don Rose,* of *Rose & Eichenauer, H. K. Siebeneck* and *Edward E. Reinhold,* for Arthur E. Brown and the Colonial Trust Co.

OPINION BY MR. JUSTICE SIMPSON, April 27, 1932:

In this case, plaintiff sued the Equitable Gas Company and the owners of the post office building to recover damages for the same explosion as that referred to at length in Martin King v. Equitable Gas Co., 307 Pa. 287. Plaintiff recovered a verdict and judgment against the Equitable Gas Company, which prosecutes this appeal; the owners obtained a verdict and judgment against plaintiff, and therefrom no appeal has been taken.

The statement of the questions involved, which limits the scope of the appeal (First Regular Baptist Church v. Allison, 304 Pa. 1; Thompson's Est., 304 Pa. 349), suggests but four questions to be decided. In the King Case, on substantially the same facts as appear here, we decided the first two thereof antagonistically to appellant, and need not repeat what was there said. The third asks: "Did the court err in charging the jury that a house-owner who pays the gas bills for his tenant, is not required to observe the same care in maintaining gas pipes on his premises, that a gas company is required to observe in maintaining its pipes in the street?" If plaintiff was complaining of the charge upon this point, we might be required to give it careful consideration; but he is not. It is a matter of no moment, however, so far as concerns appellant's liability, which does not depend, either wholly or partially, upon the liability of the owners. Hence the verdict and judgment against appellant cannot properly be reversed, merely because the property owners escape by reason of an alleged erroneous statement of the law as respects them.

The last question involved—"Was the verdict excessive?"—is the really difficult point raised on this appeal. The relevant facts, which are undisputed, are as follows: Plaintiff and his wife together occupied a part of the second story of the post office building at the time of the explosion. She was then 36 years old and was killed; he was 46 years old and was badly injured, but still survives. They were an ideal couple, living happily together during the eighteen years of their married life. He was "in perfect health"; but, the year before the explosion, she had had an attack of influenza, followed by arthritis, and was in a hospital for some two and a half months. After she recovered, she returned to her home, took up anew her household duties, and was in "fairly good health."

For about eight years before the explosion, plaintiff had been a labor foreman in the Carnegie Steel Com-

pany's works, his earnings during the last year averaging $170 a month. He was, and always had been, a steady worker. By the explosion, his clothing was torn off and he was buried under some fifteen feet of débris, which pressed heavily on him and permanently injured his chest and spine. As soon as he could be released, he was taken to a hospital, unconscious, bleeding from the ears, nose and mouth, and badly burned about the face, hands and feet. He remained in the hospital eight days. Three or four months later he returned to his work, and continued thereat three and a half months, earning $729 during this time; but he has not been able to work since then, and probably never will be; certainly not at the work he had been doing previously.

His injuries have been and always will be serious and painful. That to his chest has resulted in a paralysis of the vocal cords, so that he can barely whisper, will never be able to speak again, has such difficulty in breathing that he must constantly use a tube in his throat, must always walk slowly and does not sleep well. The injury to the spine compels him to wear a steel brace, prevents him from bending, even for the purpose of putting on his shoes, and from lifting anything that is at all heavy. His doctor's bill to the time of trial, which began June 1, 1931, together with his wife's funeral expenses, aggregated $1,375; and his personal property, destroyed by the explosion, was worth $2,000.

Upon this state of facts, is the verdict of $50,845.50, so unconscionable in amount that it should not be sustained, under the applicable legal principles stated in the King Case? On this point the court below said: "We do not consider that the verdict was in such an amount as to shock the conscience of the court. Defendant argues that the sum allowed would produce approximately an income of $250 per month without the depletion of principal, and that this income would be in excess of that to which plaintiff was accustomed. But there must also be taken into account the fact that plaintiff lost a

useful wife, that he lost his voice to a large extent, is otherwise seriously disabled for life and that expenses of more than $3,000 were incurred." Giving to plaintiff the benefit of every reasonable doubt, and the presumption that arises by reason of the approval of the verdict by the trial judge and his colleagues (Hollinger v. York Railways Co., 225 Pa. 419, 426), we are still compelled to disagree with that conclusion.

Giauque and McClure's "Tables for Ascertaining the Present Value of......Damages for Death or Injury by Wrongful Act, Negligence or Default" (4th edition) 191, 193, gives six different tables for determining the expectancy of life at various ages. Three of these are based entirely on the lives of those who have been accepted as insurance risks, and hence are of no value here. The other three show the life expectancy of males 46 years of age—which plaintiff was at the time he was injured —to be as follows: Carlisle Tables, 23.82 years; Farr Tables, 22.11 years; and Northampton Tables, 20.02 years; making an average of 21.98 years. By the same book, page 12, it appears that, treating money as producing 5 per cent net, the present value of $170 a month (the amount earned by plaintiff at the time of the explosion) for 21.98 years is $32,915.93, from which must be deducted the $729 of wages paid to him after the accident, leaving a balance of $32,186.93. If it was certain, therefore, that plaintiff would live and earn that monthly sum, during the entire period, he would be entitled to recover, for this particular loss alone, the sum last stated. We know, however, that a man's earning power ordinarily becomes less as he advances in years, not only because of a reduced weekly salary, but also because of more frequent absences from work, and that his likelihood of living during the expectancy stated depends in no small degree on heredity, environment, prior state of health, nature of his daily employment, personal habits etc., and hence, since the production of these figures might tend to mislead the untrained mind, present worth

tables "are not admissible in jury trials": McCaffrey v. Schwartz, 285 Pa. 561. As, however, "there is no [other] legal objection to proof of the present value of money payable at a future time" (Boggs v. Jewel Tea Co., 266 Pa. 428), no reason exists why the courts should not utilize them for the purpose of reaching a conclusion regarding the alleged excessiveness of a verdict. So far as concerns the instant case, but three matters would seem to be important as affecting the above calculation: (1) the hazard of his occupation, that of a worker in a steel plant; (2) his possible unemployment; and (3) the fact that his earnings would probably decrease in the later years of his life. These facts compel a reduction of the $32,186.93 to such a point as, under all the circumstances, would appear just and proper.

But, says the court below, "plaintiff lost a useful wife," one who, in the condition in which the explosion left him, would be particularly valuable to him. How is this loss to be figured? Nothing is gained by asking—for how much would any of us be willing to sacrifice such a helpmeet?—for we all would answer, in the language of the Wise Man: "Her price is far above rubies": Proverbs 31:10. As said in Foley v. Phila. Rapid Transit Co., 240 Pa. 169, 174, plaintiff "would be entitled to recover for the loss of his wife's companionship 'for the years that have passed......and for the future'...... [restricted] to such a period as under the evidence the jury might believe would mark the limit of the loss complained of." No rule can be laid down by which that loss can be measured in dollars and cents, but the amount allowed must be reasonable.

The same difficulty exists in estimating the allowance to be made for past and future pain and suffering. In Blakely v. Pittsburgh Railways Co., 243 Pa. 250, 252, following the rule of Schenkel v. Traction Co., 194 Pa. 182, we approved a charge which said: "It [suffering] had not any market price, but it is left to the good judgment and common sense of the jury to say to what

amount the plaintiff should be compensated, or what amount should be allowed for the pain and suffering he has endured, or may probably endure in the future. ......He is entitled to be compensated for that, whatever you think would be fair under the circumstances."

What, then, would be just and reasonable compensation: (1) for the sum of $32,186.93, reduced for the reasons stated; (2) for the loss of his wife's companionship; (3) for his past and future pain and suffering, and also (4) for the reasonable and probable future expenses to which he will be put during the balance of his life, as to which, while they may be very real and not improbably quite large, there can be nothing definitely known at this time? Giving to this problem the best consideration in our power, and taking into account the fact that the court and jury, who saw the witnesses and knew of the atmosphere of the case, gave a larger verdict than seems to us to be reasonable, we think the amount which should be allowed for those four items should aggregate the sum of $30,000, to which, in order to fix the amount for which a verdict may be sustained, should be added the expense paid prior to the trial, $1,375, and the value of the personal property destroyed, $2,000. We are of opinion, therefore, that the court below should have required plaintiff to remit all of the verdict over the sum of $33,375, in default of which a new trial should have been granted.

For this error three remedies exist. We may reverse the judgment and award a new venire, as was done in Gail v. Philadelphia, 273 Pa. 275, and Zimmerman v. Penna. R. R., 297 Pa. 390; or we may, under section 13 of the Act of May 22, 1722, 1 Smith's Laws, 132, 140; section 1 of the Act of June 16, 1836, P. L. 784; and section 2 of the Act of May 20, 1891, P. L. 101, (see the discussion thereof in Summers v. Kramer, 271 Pa. 189, 197-8; Carbon County Judicial Vacancy, 292 Pa. 300; Com. ex rel. v. Glass, 295 Pa. 291, 300) reverse the judgment and ourselves enter such a judgment as the court

below should have entered, or vacate the judgment and remit the record for further proceedings consistent with the opinion of this court. We think the third is the wise course to pursue on this appeal.

The judgment of the court below is vacated and set aside, the rule for a new trial is reinstated, and the record is remitted with a direction that the court below either grant a new trial, or make an order that if plaintiff, within such a time as it shall prescribe, remits all of the verdict over the sum of $33,375, judgment will be entered in his favor for that amount, otherwise the rule for a new trial will be made absolute.