Givens *v.* W. J. Gilmore Drug Company, Appellant.

362

Argued November 29, 1940. Before Schaffer, C. J., Maxey, Drew, Linn, Stern and Patterson, JJ.

*Albert C. Hirsch,* with him *Cresswell S. Shumaker,* of *Hirsch, Shumaker, Demmler & Bash,* for appellant.

*John A. Metz,* with him *John A. Metz, Jr.,* and *A. S. Fingold,* for appellee.

Opinion by Mr. Justice Stern, January 6, 1941:

This controversy has been involved in lengthy and bitter litigation. It started with a landlord's distress for

rent in 1933. This led, in 1934, to a suit by the tenant for damages, on the ground that the distraint was for a larger sum than was due and upon a greater amount of goods than necessary to meet the debt. A trial in 1936 resulted in a verdict for plaintiff in the sum of $10,000, but the court ordered a remittitur of all the verdict in excess of $5,000. This amount not being accepted by plaintiff, a second trial was had in 1939, at which a verdict was rendered for plaintiff in the sum of $12,000. The court again ordered a remittitur, this time of all the verdict in excess of $8,000. Plaintiff filed the remittitur, but defendant appealed to this court, which, in an opinion by Mr. Justice BARNES, (337 Pa. 278, 10 A. 2d 12), reversed the judgment and granted a new trial. Accordingly, a third trial followed in 1940, resulting in a verdict for plaintiff in the sum of $11,000, of which $1,000 was for punitive damages. The trial court refused defendant's motions for a new trial and for judgment n. o. v., and entered judgment on the verdict, from which defendant brings its second appeal to this court. It is apparent that due regard for dispatch and efficiency in the administration of the law now calls for a decision that will write a finis to this protracted battle of seven years' duration.

As far as plaintiff's right of recovery is concerned, the significant facts were set forth in the opinion of Mr. Justice BARNES with such clarity that any further discussion of them would be merely repetitious. The law of the case was there stated, and nothing was developed at this latest trial which introduced any new legal problem in that regard. The only question remaining for determination is whether the verdict rendered by the jury is "so excessive as to shock our sense of justice, and the impropriety of permitting it to stand is so manifest as to show an abuse of discretion on the part of the court below in refusing to set it aside." *(Brown v. Paxton,* 332 Pa. 260, 264, 2 A. 2d 729, 731.)

In reviewing the first verdict, in 1936, Judge GRAY, who presided at the trial, said in his opinion: "We are satisfied the plaintiff's stock in trade was worth very little. His fixtures were dilapidated, his stock was old and largely unmerchantable, his business was failing. . . . The verdict for $10,000 is manifestly excessive."

In reviewing the second verdict, in 1939, Judge MARSHALL, who presided at that trial, said in his opinion: "We must bear in mind that there is very little evidence in this case to indicate that plaintiff's drugstore was a prosperous concern and we must also bear in mind that the fixtures were old and out of date and that several floods had depreciated their value. And it is very likely that the plaintiff had an exaggerated idea as to the market value of his fixtures."

On the appeal from the second trial Mr. Justice BARNES said (pp. 283-285): "It appears from the record that much of the merchandise was old stock which had been on hand for more than five years, and therefore its valuation at cost was clearly inflated. The tax return showed that his total inventory had decreased to the extent of $2,000 during the year 1932, despite average monthly purchases of $500. It is reasonable to believe that it continued to decrease during the succeeding six months before the levy was made. There is evidence that plaintiff's business was failing, that he was making purchases from day to day to supply his current needs, and that sales were being made from the newer and more merchantable stock. . . . The reliability of plaintiff's estimates of the value of his merchandise is made questionable by his repudiation of the copy of the tax return from which he testified. . . . Although the question was one for the jury, it seems clear that the evidence produced was insufficient to form a proper basis for their determination. Certainly it was not adequate to sustain a verdict of either $12,000 or $8,000. . . . Here, there is an absence of positive proof of actual damage, so that the award of $8,000 appears excessive on its face, and

affords ample reason for the award of a new trial. . . . While plaintiff may have been harmed as a result of defendant's action, the conclusion cannot be avoided, from reading the record, that an attempt has been made to base upon a simple tort a claim for excessive and unwarranted damages. The plaintiff is entitled to be made whole, not rich."

While plaintiff at the third trial, now under review, sought to supply gaps in his testimony which had been pointed out in Mr. Justice BARNES' opinion, and managed to bring to recollection some facts which in previous trials he had apparently been unable to remember, nevertheless the record as it now stands is little, if any, more convincing than before. Several witnesses for defendant placed a fair market value of $400 to $600 upon all the property sold by the constable, and testified that the condition of the store was "terrible," the drugs "worthless," and the fixtures "in very bad shape." In attempting, however, to arrive at a just and fair determination of the damage that plaintiff actually suffered and for which he is therefore entitled to recover, we should, and will, consider only his own testimony and that of his witnesses. In so doing we note the following facts, none in itself conclusive, but cumulatively of impressive significance.

1. Plaintiff testified that the fixtures in his store at the time of the distraint had cost him up to $7,200, but his testimony was extremely confused and based upon calculations some of which were obviously inaccurate. In his income tax report for 1932 he had stated the cost price of these fixtures as $5,000.

2. Plaintiff fixed the fair market value of the fixtures at approximately $4,700, and their replacement value at $5,200, but in his income tax report for 1932 he had valued them at $400, having through successive years depreciated them $4,600 from their original cost. His witness, a salesman who had once sold him a soda fountain, gave considerably lower valuations than those of plaintiff.

3. Although the various fixtures had been owned and used by plaintiff for periods of time ranging from ten to forty years, he based his estimate of their market value upon an arbitrary, uniform reduction of 25% from their cost price, and then, equally arbitrarily, made a general addition of 10% in order to determine their replacement value.

4. Plaintiff and his former assistants valued the merchandise on hand at the time of the distraint at $4,000 to $4,500, but for this they relied principally upon the alleged fact that he had made an inventory of the stock some six months before the levy, and that its total had amounted to those figures. They testified that this inventory was in the store when the distress was made and plaintiff thereupon lost possession of it.

5. The only attempt to detail the items of merchandise and their value was furnished in the testimony of plaintiff's clerk, who itemized the quantities and prices of various leading drugs and patent medicines which he said were in the store at the time of the levy. The sum total of the values of all the merchandise which he thus enumerated amounted to but slightly over $100.

6. A witness for plaintiff who also had a drugstore in McKees Rocks, where plaintiff's store was located, testified that he visited there frequently, and professed to be able, without any actual examination of quantities or specific items, to value the merchandise, as he did, in bulk, at "about $3,500 to $4,000." This, and all other testimony additional to that already mentioned, was of a vague and general character upon which no reliable estimate could possibly be based.

7. After the distraint and before the constable's sale, counsel for plaintiff called upon a representative of defendant company and made a proposition that, if it would agree to release plaintiff's household furniture from the levy (which furniture, in fact, plaintiff later removed), plaintiff, in satisfaction of the rent due, would give defendant a bill of sale for all the other prop-

erty distrained upon, an offer which defendant refused because of fear of complications under the Bulk Sales Act. This furnishes striking evidence of the fact that plaintiff did not then consider that the property now claimed to amount to thousands of dollars was worth more than the $650 rent which he was obligated to pay.

8. It is stated in the opinion of Judge GRAY, apparently upon the testimony produced at the first trial, that there were a number of bidders present at the constable's sale and, while they were said to have been "professionals" who purchase at such sales only if they can obtain great bargains, their maximum bid was $300; defendant was awarded the property on its bid of $600. Plaintiff has never claimed that there was any irregularity or impropriety in the conduct of the sale.

9. While the learned trial judge correctly instructed the jury that they might award damages to plaintiff for delay or detention in an amount not exceeding six per cent per annum,—an award which no doubt constituted a large part of the present verdict,—it must be remembered that such damages are not permissible when the demand made by the plaintiff is so excessive that the defendant is justified in resisting it until there has been a final judicial determination of the amount due: *Stevenson v. Ebervale Coal Co.,* 203 Pa. 316, 332, 333, 52 A. 201, 202, 203; *Pierce v. Lehigh Valley Coal Co.,* 232 Pa. 170, 81 A. 142; *Trustees of the Proprietors of Kingston v. Lehigh Valley Coal Co.,* 241 Pa. 481, 485, 88 A. 768, 769, 770; *Conover v. Bloom,* 269 Pa. 548, 112 A. 752; *McPherson v. Pittsburg Railways Co.,* 50 Pa. Superior Ct. 233. In the present case plaintiff, in his statement of claim, demanded $20,000 damages, an amount obviously beyond all reason, and his testimony throughout indicates an extravagant conception of his actual loss.

10. The evidence is far from convincing that the errors made by defendant's representative and by the constable in levying the distress for too much rent and

upon too much property were inspired by malice or improper motive on the part of defendant. There is no suggestion that defendant ever realized more out of the property purchased at the sale than the $600 which it paid for it. While it cannot be said that punitive damages were not permissible, the facts of the case do not warrant an immoderate allowance for that item of recovery.

On the whole, while we realize—the verdicts in three different trials having approximated the same amount— that this court should gravely hesitate to interfere, we nevertheless feel compelled, because of the facts above enumerated, to order a substantial reduction of the verdict so that justice in this case may be attained.

To cure an excessive verdict three remedies exist: (1) to reverse the judgment and award a new venire, or (2) to reverse or modify the judgment and enter such a judgment as the court below should have entered, or (3) to vacate the judgment and remit the record for further proceedings consistent with the opinion of this court: *Thirkell v. Equitable Gas Co.*, 307 Pa. 377, 384, 385, 161 A. 313, 315; *Culver v. Lehigh Valley Transit Co.*, 322 Pa. 503, 511, 512, 186 A. 70, 74, 75; *Brown v. Paxton*, 332 Pa. 260, 264, 265, 2 A. 2d 729, 731. The second of these courses has been adopted by this court in many instances,* and, since all the facts of the present case have now been fully developed, no purpose would be served by another trial. Accordingly, the verdict is herewith reduced to $6,500, an amount which we believe will amply compensate plaintiff for all the damage he may have sustained.

As thus modified, the judgment is affirmed.

---

* For example: *Tauber v. Wilkinsburg*, 309 Pa. 331, 336, 163 A. 675, 676, 677; *Thompson v. Swank*, 317 Pa. 158, 160, 176 A. 211, 212; *Gob v. Pittsburgh Railways Co.*, 320 Pa. 225, 233, 181 A. 489, 492; *Koontz v. Messer*, 320 Pa. 487, 496, 181 A. 792, 796; *McLaughlin v. Tygard*, 324 Pa. 146, 149, 188 A. 105, 106; *Ward v. Pittsburgh Railways Co.*, 332 Pa. 152, 156, 2 A. 2d 694, 695; *Brown v. Paxton*, 332 Pa. 260, 265, 2 A. 2d 729, 731.