HERMAN S. KEYSER, ADMINISTRATOR, *vs.* GRAN-
VILLE H. RICHARDS ET AL.

*Action by Administrator—Personal Injuries to Decedent—*
*Joint Tort Feasors—Averments of Declaration—Pupil*
*at School—Lack of Care for.*

The damages recoverable under Code, art. 93, sec. 106, giving executors and administrators full power to prosecute any personal action, other than actions of slander, which the testator or intestate might have prosecuted, are such damages only as the deceased sustained in his lifetime and for which he could have recovered had he lived. p. 677

Where a suit on account of negligence is brought against a number of alleged wrongdoers jointly, it is essential that they be charged with jointly participating, by their negligent acts and omissions, in causing the injury or damage complained of.
 p. 677

In an action against several on account of tortious acts by which they jointly participated in causing the damage complained of, the tortious acts of the different defendants must be specifically alleged in the declaration. p. 677

In an action on account of physical and mental suffering alleged to have been caused plaintiff's decedent by the failure

of the various defendants, employees of a school at which decédent was a student, properly to care for the latter while ill at the school, *held* that the declaration failed to allege, as to any one of defendants, a failure of duty as regards such decedent, resulting in the damage complained of.        pp. 677-680

In an action against employees of a school, an averment in the declaration that all the defendants jointly and severally failed to exercise ordinary care and prudence in connection with the treatment, nursing and care of plaintiff's decedent during his last illness, but were guilty of gross negligence in connection therewith, and by said conduct jointly and severally gravely aggravated said illness and caused him great physical and mental pain and suffering, if to be treated as a separate and distinct allegation, was too general and indefinite to be good on demurrer.                      p. 681

*Decided June 30th, 1925.*

Appeal from the Circuit Court for Cecil County (ADKINS, C. J., WICKES and KEATING, JJ.).

Action by Herman S. Keyser, administrator of C. Bernard Keyser, deceased, against Granville H. Richards and others. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, PARKE, and WALSH, JJ.

*Isaac Lobe Straus* and *Vernon Cook,* for the appellant.

*James U. Dennis,* with whom was *Omar D. Crothers* on the brief, for the appellee Richards.

*George Weems Williams* and *Wm. Pepper Constable,* with whom were *William T. Fryer* and *John D. Alexander* on the brief, for the other appellees.

PATTISON, J., delivered the opinion of the Court.

The suit in this case was brought by Herman S. Keyser, administrator of C. Bernard Keyser, deceased, against Granville H. Richards, Mary Irene Morris, Murray P. Brush, Isabelle T. Bagley and Martha Sue Hardesty, to recover for the physical pain and suffering of the said C. Bernard Keyser, caused, as alleged, by the negligence of the defendants in the treatment, nursing, care, and management of the said C. Bernard Keyser while a student at the Tome Institute.

The appellees demurred to the declaration and the demurrers were sustained, with leave to the plaintiff to amend, but as he refused to amend, judgment was entered for the defendants, and this appeal is from that judgment.

The declaration alleges that:

"Herman S. Keyser, administrator of C. Bernard Keyser, deceased, by Isaac Lobe Straus and Vernon Cook, his attorneys, sues Granville H. Richards, Mary Irene Morris, Murray P. Brush, Isabelle T. Bagley and Martha Sue Hardesty.

"For that the plaintiff is the administrator of C. Bernard Keyser, duly appointed by the Orphans' Court of Baltimore City; that the said C. Bernard Keyser, now deceased, was the only son of the plaintiff, and that the said C. Bernard Keyser died on March 13th, 1923.

"In January, 1923, the plaintiff entered his son as a student at the Tome Institute, Port Deposit, Cecil County, Maryland, a school for boys. About two years prior to the date mentioned the said C. Bernard Keyser had suffered a serious illness, and upon entering him in the Tome Institute the plaintiff notified the authorities in charge of the said school that the boy had been away from school for nearly two years, had suffered from tonsilitis, rheumatism, chorea and heart lesion and endo-carditis, and especially requested that his son should receive the personal supervision of the head of the school, should not be given violent exercise, and that the plaintiff should be notified in case the boy at any time appeared to be unwell.

"That subsequently, about February 1, 1923, said C. Bernard Keyser became sick and was sent to the infirmary of the Tome Institute, which is conducted under the management, supervision and control of the defendants; that although the plaintiff had requested immediate notice of any illness of his son, no notice was given him of his illness and the plaintiff did not learn of the same until February 4, 1923, when he happened to telephone his son and learned from his son that he was sick and in the infirmary. The illness was said to be either a cold or the grippe. The boy was kept in the infirmary from February 1 to February 6, on which latter date he was discharged from the infirmary by the defendants, although he had not at that time recovered from his illness.

"Subsequent to the above happenings the said C. Bernard Keyser occupied a room assigned to him in the dormitory on the third floor. About midnight of February 11, 1923, one of the water pipes in said building broke and a large quantity of water ran down through and over the walls and floor of the room occupied by the said .C. Bernard Keyser. The walls became thoroughly soaked and damp, and this condition was recognized by the defendants, who removed the boy to a dry room early Monday morning. On Tuesday, however, the boy was again removed to a room on the second floor, directly underneath the room which he had previously occupied, the walls of which second-floor room had also been flooded and were damp, and said C. Berrnard Keyser was compelled to sleep in said damp room on Tuesday night, and continuously thereafter until February 16, notwithstanding that he was at that time still sick.

"On February 16, 1923, the boy complained to Isabelle T. Bagley, one of the defendants herein, and then and now the general housekeeper of the Tome Institute (and as such housekeeper exercised her direct and personal control over the boys living at the school), that he was sick and asked her to take his temperature. This she refused to do and ordered him to go to school.

The boy, however, instead of going to school, went to the defendant, Dr. Granville H. Richards, who was and is the school physician, and to whom was and is entrusted the medical care of the boys at the school (and particularly of the boys in the infirmary, and having the general charge and supervision of the infirmary and the patients, nurses, housekeeper and other employees therein). Said Dr. Richards took the boy's temperature and found that he had a fever, and sent him to the infirmary. On February 18th the plaintiff visited his son at said infirmary. He found him in a room not sufficiently heated; the steam or hot-water pipes were hardly warm, the window was up and the wind blowing through the room, although the temperature outside was below freezing. The plaintiff complained to the defendant, Mary Irene Morris, who was the resident nurse in charge of the infirmary (under the supervision of the defendant, Dr. Richards, and at such time in the immediate charge of the infirmary and the boys placed therein), about the room being so cold, and she informed the plaintiff that the man who fired the heating plant had not been around that morning, although it was then between 10.30 and 11 o'clock. The plaintiff, being desirous of seeing the defendant, Dr. Richards, asked when he would call, and not being able to ascertain definitely, waited until late in the afternoon in the hope of seeing the doctor, but no doctor called. During this time the plaintiff observed that his son, although suffering with a high fever and temperature, was compelled to get up out of his bed and walk through a cold hallway every time he had to visit the toilet. The plaintiff thereupon insisted that the nurse should provide a urinal and bed pan, which she agreed to do. He also requested that his son be protected from chilling and kept quietly and warmly in bed and not allowed to get out of bed for any purpose whatever, to all of which the nurse agreed.

"On February 19 the plaintiff called the defendant, Dr. Richards, by telephone and told him that he considered that his son was not receiving proper nursing

attention in that he had been required, notwithstanding that he had a high fever, to get out of bed and go through the hallway aforesaid every time he wished to go to the toilet, and asked the defendant, Dr. Richards, to have this condition remedied in the future, and not to let the boy get out of bed for any reason whatever, which the defendant, Dr. Richards, promised he would do. The plaintiff also asked the said defendant what was the matter with his son, and the defendant replied that he had the grippe, accompanied by fever and temperature. The defendant, Dr. Richards, also suggested that he would move the boy to a private room on the second floor, where he could be watched more closely and given better attention. This was accordingly done. On February 20 the plaintiff again talked with the defendant, Dr. Richards, over the telephone. The doctor said that the boy was doing very well; was better than the day before, his temperature was still not normal and the doctor further said that he had given orders that the boy was not to get out of bed for any purpose. On February 21 the defendant, Murray P. Brush (the principal or headmaster of the Tome Institute, and in general charge of the entire institution, including the dormitory and the boys living therein), being in Baltimore, visited the plaintiff and assured him that his son was getting along nicely and he thought he would be all right in a few days. On this same day, February 21, 1923, the defendant ordered the removal of the said C. Bernard Keyser from the private room on the second floor to the general ward on the first floor. The reason given for this removal was that one of the teachers at the Tome Institute, Professor Davenport, was seriously ill and that the father of said Professor Davenport, who is a Bishop of the Protestant Episcopal Church, living at Easton, Maryland, came to Tome Institute to visit his son, Professor Davenport, and that the said C. Bernard Keyser was ordered out of his private room in order that the same might be used by Bishop Davenport, though this, of course, was done without the knowledge of the said Bishop; that

on the day in question the said C. Bernard Keyser was very ill; he was suffering with rheumatic fever and endo-carditis. It is most essential to the proper treatment of this disease that the patient be given complete rest in bed and not allowed to make any exertion whatsoever, and not allowed to get out of bed for any cause whatsoever. The boy during the day in question had a temperature which ranged from 99 to 101, and a pulse which ranged from 90 to 108, and had been much weakened by his illness, from which he had then been suffering for many days. Notwithstanding the critical illness of the boy, he was required to get up out of his bed unassisted and to walk downstairs to the first floor, and although he protested that he was too sick to do so, he was required to do so. Proper medical care would not have permitted his removal except for some most urgent reason and would not under any circumstances have permitted him in view of his heart condition to walk from the private room to the ward on the floor below. There was no sufficient cause for ordering his removal, and if the removal had been necessary the only permissible way of carrying out such removal according to well recognized and established medical practices would have been to have carried the boy on a stretcher, with proper bed-covering about his body. This removal of the boy from the one room to the other was an act of the grossest neglect on the part of those in charge of the case, greatly aggravated and increased the seriousness of the boy's illness, greatly increased his pain and suffering, and diminished his chance of recovery from the disease from which he was suffering.

"On February 25, 1923, the plaintiff again visited the infirmary and protested against the treatment which the boy had received, whereupon the defendant, Dr. Richards, became extremely angry and told the plaintiff that if he was not satisfied he should remove the boy immediately to some other hospital. This, of course, was impossible in view of the boy's condition.

Subsequently, on March 5, 1923, the defendant, Dr.

Richards told the plaintiff that he proposed to give the boy sodium caccadylate, a preparation containing arsenic, whereupon the plaintiff informed the defendant, Dr. Richards, that the boy was not able to take arsenic, that this fact had been established during his previous illness while at a sanatarium conducted by Dr. Sargent at Towson, Maryland; that Dr. Sargent had given the boy arsenic and found that it produced bad effects upon him. The plaintiff requested the defendant, Dr. Richards, to telephone to Dr. Sargent and confirm his statements on this matter. This, however, the defendant, Dr. Richards, failed or refused to do. He gave the boy arsenic for two or three days, at the end of which time the boy showed signs of collapse and the defendant, Dr. Richards, admitted that the effect of giving him arsenic had been bad. From this time on the boy continued to be in a critical condition until March 13, 1923, when he died.

"Each and all of the defendants, acting in their respective position and spheres and along the respective lines above stated, jointly participated in the care and management of the said C. Bernard Keyser during his last illness and during all the time hereinbefore mentioned; that they each and all undertook to exercise due and ordinary care in the premises, and that they each and all jointly and severally failed to exercise ordinary care and prudence in connection with the treatment, nursing and care of the said C. Bernard Keyser during his last illness, but were guilty of gross negligence in connection therewith, and that by said conduct they jointly and severally gravely aggrravated the illness of the said C. Bernard Keyser, and caused him great physical and mental pain and suffering.

"And that neither the plaintiff nor his deceased son in any way contributed to the happening of the injuries hereinabove mentioned, but on the contrary they both used all possible care in all respects and· at all times in connection with the matters hereinbefore mentioned."

The action in this case was brought under section 106 of article 93 of the Code of 1924, which provides that: "Executors and administrators shall have full power to commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted, except actions of slander."

The damages recoverable under this act are only such damages as the deceased sustained in his lifetime and for which he could have recovered had he lived. *Stewart v. United Electric Light and Power Co.,* 104 Md. 332. And by the declaration in this case such damages are limited to compensation for physical and mental suffering endured by the deceased.

The ground of the demurrer is that it is not shown by the facts alleged in the declaration that there was any joint negligence on the part of the defendants causing the alleged physical and mental pain and suffering inflicted upon C. Bernard Keyser, deceased.

In this case, where the suit was brought against all the alleged wrongdoers jointly, it was essential that they should have been charged with jointly participating, by their negligent acts and omissions, in causing the injury or damage complained of. 1 *Poe, Pl. & Pr., sec.* 527.

It was also essential to good pleading that such tortious acts of the different defendants should have been specifically stated or alleged in the declaration. *Jeler v. Schwind Quarry Co.,* 97 Md. 698. This the pleader attempted to do, but he has, we think, failed, by such statements or allegations, to charge the defendants with such joint participation in the alleged wrong committed as is required in such cases.

The defendant, Isabelle T. Bagley, the housekeeper of the Tome Institute, who, as alleged in the declaration, exercised personal control over its boys, was charged with refusing to take the temperature of C. Bernard Keyser, when called upon by him to do so, and ordering him to go to school. This is the only specific charge found in the declaration against this defendant, and it was not therein charged that it was

her duty to take his temperature, and it could not be said that she, by her refusal to do so, participated in the alleged wrong committed, from which, it is charged, the alleged damages sued for resulted, for, as the declaration alleges, young Keyser, instead of going to school, as directed by her, went to the defendant, Dr. Granville H. Richards, the school physician, to whom was entrusted the medical care of the boys, and he took his temperature and, finding he had some fever, sent him to the infirmary.

The charge, if any, against Mary Irene Morris, was in the nature of complaints made to her by the plaintiff, (1) that the room occupied by his son on February 18th was not sufficiently heated, in reply to which she stated that the man who fired the heating plant had not been around that morning, and (2) that his son, "although suffering with a high fever and temperature, was compelled to get up out of his bed and go through a cold hallway everytime he had to visit the toilet."

It was not charged that it was her duty to see that the room was properly heated. This, as indicated by her answer, was the duty of another, and the fact that the window was up and the wind allowed to pass through the room might have been thought by those in charge of the patient to be the best for him, but, in any event, it was not alleged that the unheated condition of the room was hurtful to him, or that it caused or in any way aided in causing, the pain, and suffering complained of. As to the second complaint, that he was required to go through the cold hallway in going to the toilet, it was not alleged that he was required by *her* to do so, nor is it alleged that any injury to him was caused thereby.

The charge upon which the defendant, Murray P. Brush, principal and headmaster of the institution, is sought to be held liable, is the removal of young Keyser, on February 21st, from the room then assigned to him on the second floor to the general ward on the first floor, at a time when it is said he was very ill, suffering with rheumatic fever and endo-

carditis. It was alleged in the declaration that "it is most essential to the proper treatment of this disease that the patient be given complete rest in bed and not allowed to make any exertion whatsoever," and that "proper medical care would not have permitted his removal except for some most urgent reason and would not under any circumstances have permitted him, in view of his heart condition, to walk from the private room to the floor below"; that "there was no sufficient cause for ordering his removal and if the removal had been necessary," the "recognized and established medical practice would have been to have carried the boy on a stretcher, with proper bed covering about his body"; that "this removal of the boy from the one room to the other was an act of the grossest neglect on the part of those in charge of the case, greatly aggravated and increased the seriousness of the boy's illness" and "greatly increased his pain and suffering."

The declaration does not make any specific charge against Mr. Brush in connection with this alleged tortious act. The only reference to him is "that on February 21st, the defendant, Murray P. Brush, being in Baltimore, visited the plaintiff and assured him that his son was getting along nicely and he thought he would be all right in a few days."

C. Bernard Keyser was at that time under the care of the school physician, Dr. Richards, and it is not alleged that the statement made to the plaintiff by the defendant, Brush, as to the boy's condition on the morning of the 21st of February, was untrue and that he knew it to be untrue. Mr. Brush, by the declaration, was not shown to have been a physician, and no doubt the information imparted by him to the plaintiff was acquired from those in the infirmary having charge of the patient. Nor is it alleged that he had knowledge of the serious illness of the boy or the alleged consequence attending such removal; and with nothing more to connect him therewith, the general allegation is made, that the *defendants* ordered the patient's removal, though it is afterwards alleged that the removal was the grossest neglect

on the part of *those in charge of the case,* which, upon the facts alleged, would not, we think, include him.

As to the defendant, Martha Sue Hardesty, no specific charge whatever is made against her as a participant in the wrong complained of. In fact her name appears but twice in the declaration, the first at its beginning, among those sued, and next, when her position is defined as "special house-keeper in charge of the infirmary."

The following charges or complaints are made against Dr. Richards, the physician of the school: (1) that the plaintiff was not notified by Dr. Richards of his son's illness as he had requested, but heard of it from his son, who was then in the infirmary; (2) that he, the plaintiff, was disappointed in not seeing Dr. Richards at the institution, after waiting there several hours to see him, though he had no definite appointment with him; (3) that his son was required to go through the cold hallway to the toilet, but this was corrected by the doctor at the suggestion of the plaintiff; (4) that Dr. Richards administered arsenic to the boy with bad effects, after being told by the plaintiff that the boy was not able to take arsenic, it having been previously administered to him by a physician at Towson with injurious effects.

The fact that the plaintiff was not notified of his son's illness at the time stated, and that he was disappointed in not seeing Dr. Richards on the occasion of his visit to the infirmary, are certainly not sufficient averments charging Dr. Richards and the other defendants with jointly causing the alleged pain and suffering, for which damages in this case are sought to be recovered.

As to the charge that the boy was required to go through the cold hall to reach the toilet, it may be said that there is no allegation as to who required him to do so, nor is it alleged that any injury resulted therefrom.

The allegation that Dr. Richards administered arsenic to the boy with bad effects does not show that the act was negligent or caused any specific injury or damage.

It is alleged that, after administering the arsenic, the boy

showed signs of collapse, but it did not necessarily follow that the collapse was caused by its use, and such fact is not alleged. At most the act was the individual act of Dr. Richards, with which the other defendants were in no way connected.

The declaration concludes with the general allegation that "each and all of the defendants acting in their respective positions and spheres and along the respective lines above stated * * * jointly and severally failed to exercise ordinary care and prudence in connection with the treatment, nursing and care of the said C. Bernard Keyser during his last illness, but were guilty of gross negligence in connection therewith and that by said conduct they jointly and severally gravely aggravated the illness of the said C. Bernard Keyser, and caused him great physical and mental pain and suffering."

This general allegation is only the conclusion of the pleader or his interpretation of the meaning and effect of the preceding specific charges against each of the defendants, which, we think, is inconsistent and in conflict with the meaning and effect of such allegations, but if such general allegation should be treated as a separate and distinct allegation, it is, as was said by Judge Alvey, in *Gent v. Cole,* 38 Md. 110, "altogether too general and indefinite to be good on demurrer." *Jeter v. Schwind Quarry Co., supra.*

The demurrer in this case was, in our opinion, properly sustained and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*