STATE ROADS COMMISSION OF MARYLAND *v.*
BERRY ET AL.

[No. 49, October Term, 1955.]

462

*Decided December 6, 1955.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Henry L. Rogers* and *John W. Hessian, Jr., Special Attorneys for the State Roads Commission,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for the appellant.

*W. Lee Harrison,* with whom were *Smith & Harrison* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

These condemnation proceedings were instituted by the State Roads Commission in the Circuit Court for Baltimore County to acquire for the Baltimore-Harrisburg Expressway a portion of the dairy farm owned by Frederick J. Berry and Grace A. Berry, his wife, near Hereford. Code 1951, art. 33A, secs. 1-26.

Prior to the condemnation, the farm contained about 120 acres. About 75 acres thereof consisted of hillsides, ravines, and woodland, and only about 45 acres were tillable. A stream running through the farm, known as Piney Run, was a valuable asset for the watering of cattle. The Commission entered into negotiations with the owners with the view of purchasing a portion of the property; but when it became evident that the Commission and the property owners would not be able to reach an agreement on the value of the portion desired for the highway, the Commission filed a condemnation petition against the owners and the National Bank of Cockeysville, mortgagee of the property. The Commission also deposited with the Clerk of the Circuit Court a check

for $3,030, which it alleged to be the fair value of the part of the property taken.

The Commission condemned more than 13 acres in fee simple. It also acquired an easement in more than one acre so as to be able to make such stream changes and facilities as it may consider necessary. It was testified that the owners have also lost access to an area of about four acres west of the new highway.

Prior to the condemnation, Piney Run entered the farm from the west, curved to the south, and ran through the farm for more than 900 feet to the south boundary line. The area taken by the Commission in fee simple took nearly all of the bed of the stream on the farm. At the time of the trial the new highway had been brought to rough grade, and there was a wire fence around the easement area. The stream had been diverted from an easterly direction by a concrete culvert and discharged into a deep channel, which had been dug in a southerly direction parallel to the area condemned in fee simple.

Defendants had been living on the farm for about ten years, and had supported themselves and their seven children by dairy farming. They owned 25 Holstein milk cows and a number of heifers. Their daily shipment of milk averaged over 70 gallons. It was uncontradicted that the loss of nearly half of their tillable land made it impossible to operate their farm profitably any longer. Defendants asserted that the remaining acreage is insufficient to produce a sufficient quantity of grain and dairy feed. They also stated that the diversion of the stream deprives them of the advantage they had of watering the cattle in the stream. They found it necessary even before the trial to dispose of half of their herd.

Defendants produced three witnesses, William R. Whittingham, W. D. Akehurst, and Edwin H. Nicholson, who testified as experts as to the value of the farm before the condemnation and after it.

Whittingham, who studied animal husbandry and dairying at Cornell University and for many years was a dairy farmer in Baltimore County and an employee of

the Maryland Cooperative Milk Producers Association, estimated that the farm was worth $42,000 prior to the condemnation, when there was enough land to support 25 cows; but that now, when it will support only 13 cows, it is worth between $12,000 and $14,000.

Akehurst, who also took the course in animal husbandry and dairying at Cornell and had operated a dairy farm for many years and served as a director of two banks and an insurance company, appraised the farm at between $43,000 and $45,000 before condemnation and between $10,000 and $12,000 after condemnation.

Nicholson, a resident of Sparks, who has been a real estate broker for more than 50 years and operates a real estate agency in Baltimore specializing in farms, appraised the farm at $40,000 prior to condemnation and at $12,000 to $15,000 after condemnation. In explaining why he thought the damage from the condemnation would be at least $25,000, he testified as follows:

"Mountain goats would be all right on it. You can't run a tractor up those hills. And in the back is woods. * * * The only part left, right-hand side as you come in the road, and that is pretty good ground right in there. But as a dairy farm * * * a dairy man wouldn't buy it. If a city man went in to buy it, he positively would not go in that road * * * because that road is about $7/10$ of a mile long. * * * In the wintertime a man going to work in the city would have to use a tractor to get out. * * * A city man is not going to a place like that. I don't know what you are going to use it for, unless chickens or something like that."

The Commission produced one appraiser, Mac Gardiner, who had been selling building lots on the Eastern Shore. He appraised the farm at $39,925 before condemnation, and at $34,589 after condemnation. However, when he was asked whether he knew anything about dairy farms, he answered: "Very little. * * * I am not a dairy farmer. I am a real estate appraiser,

and I think I am qualified to determine a dairy farm from a dirt farm, to that extent; that is the extent of my knowledge of dairy farms."

On May 23, 1955, the jury found the damages from the condemnation to be $24,000. On June 3 the judgment was entered upon the jury's inquisition. The Commission then appealed here from the judgment.

One of the Commission's complaints was that the trial judge asked Enoch C. Chaney, its District Engineer, whether the Commission would have the right to make further diversion of Piney Run and thus deprive defendants completely of the use of the stream. After Chaney had testified that any changes in the course of the stream had to be confined to the easement area, the judge asked him: "Suppose you relocate it and put it within 200 feet, could you do that? You have the power to do it, do you not?"

Chaney answered: "I expect we would."

The judge then asked him: "But you could do it if you wanted to?"

Chaney repeated: "I expect we could, yes."

Counsel for the Commission then made an objection to the judge's questions. On appeal the Commission argued that the District Engineer is not a lawyer and should not have been asked to give an opinion on the scope of the Commission's power under the condemnation. However, the judge did not rule on the objection.

Under Rule 17 of the Rules of the Court of Appeals, formal exceptions to rulings or orders of the trial court are no longer necessary. It is sufficient for all purposes for which an exception was formerly necessary that a party, at the time a ruling or order is made or sought, makes known to the court the action which he desires the court to take, or his objection to the action of the court and his grounds therefor. However, although exceptions are no longer necessary, it is still necessary for the purpose of appeal that some timely objection be made and that the court rule upon the question. Rule 9 explicitly directs that in no case shall the Court of Appeals

decide any point or question which does not plainly appear by the record to have been tried and decided by the court below. In the absence of such a ruling, there is nothing for the Court of Appeals to review and no basis for the contention that the trial court committed reversible error. *Courtney v. State,* 187 Md. 1, 48 A. 2d 430; *Davis v. State,* 189 Md. 269, 55 A. 2d 702; *Kennedy v. Crouch,* 191 Md. 580, 586, 62 A. 2d 582.

The Commission contended that the judge committed reversible error in his rulings on the testimony concerning the damage from the acquisition of the easement for the purpose of changing the channel of the stream. The Commission argued that those rulings gave the jury the impression that defendant had lost the stream, whereas actually the acquisition of the easement area and the diversion of the course of the stream into an artificial channel did not deprive defendants of any of their riparian rights. One of the specific complaints was that the judge struck out the statement of Mac Gardiner that he understood there would be no damage from the change of the channel of the stream. The Commission contended that defendants now have the use of the easement area and the artificial channel, and the Commission has no right to make any other change in the course of the stream. The Commission also complained because the judge refused to let Carl E. Wyant, Assistant Right of Way Engineer, give his understanding of the purpose of the fence around the easement area.

There was no prejudicial error in the exclusion of this testimony. What the Commission took from defendants is determined by the condemnation petition, the plats, and the jury's inquisition, not by the understanding of employees of the Commission. Apparently the Commission could again divert the channel at any time, and defendants could not insist on keeping the present channel. As Mr. Tiffany states, in the case of an artificial watercourse over the land of one person, which had its inception exclusively in the needs of another person, the person whose land is thus burdened would have no right to

insist on a continuance of the burden; that is, he would have no easement to have the flow of water so continued for his benefit, nor would he, not having the right to have it continued, have any right as to the water itself. 3 *Tiffany, Real Property*, 3d Ed., sec. 767.

The Commission also complained because the judge permitted Whittingham, Akehurst and Nicholson, who were produced as expert witnesses, to give their opinions as to the damage resulting from the change of the course of the stream. The judge admitted that testimony subject to exception. No sufficient reason was given why the testimony was not admissible. Moreover, in most instances no motion was made to strike out the testimony. Therefore, we find no reversible error here.

The Commission complained because the judge refused to instruct the jury (1) that the easement area was taken solely for the purpose of changing the course of the stream, and defendants retain the fee simple title to this area; and (2) that the Commission has no right to deprive defendants of full and complete use thereof as long as such use does not interfere with the relocation of the stream and the maintenance thereof. The Commission further complained because the judge instructed the jury (1) that the measure of damages is the value of the land taken, together with an allowance for any consequential damages to the remainder of the property as a result of the taking and diversion of the stream, and the right to further divert the stream in the future; and (2) that the jury, in arriving at the value of the land taken and the resulting damage to the farm, may consider the fact that the farm had been operated profitably as a dairy farm and take into account the amount of grain and dairy feed the acreage condemned is capable of producing, and how far the loss of this land and the stream will affect the profitable operation of the farm.

The record shows that counsel for the Commission failed to object to the judge's charge before the jury retired to consider the verdict. It was not until after the jury retired that counsel told the judge that they

wanted to make objections. It was then too late. Before the jury retires to consider its verdict, a party may object to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instruction, stating distinctly the portion, or omission, or failure to instruct, to which he objects and the specific grounds of his objection. On appeal a party, in assigning error in the instructions, is restricted to (1) the particular portion of the instructions given, or the particular omission therefrom, or the particular failure to instruct, distinctly objected to before the jury retired, and (2) the specific grounds of objection distinctly stated at that time. Under our rules, no other errors or assignments of error in the instructions are considered by the Court of Appeals. General Rules of Practice and Procedure, part 3, subd. 3, rule 6.

As there was no reversible error in the rulings and instructions of the trial judge, we must affirm the judgment entered upon the jury's inquisition.

*Judgment affirmed, with costs.*