RHONE *v.* FISHER

[No. 84, September Term, 1960.]

*Decided February 7, 1961.*

*Motion for rehearing filed March 6, 1961, denied March 16, 1961.*

224

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harry Goldman, Jr.,* with whom were *Richard Whittington Whitlock* and *Walter E. Litvinuck* on the brief, for appellant.

*Max Sokol* and *Melvin J. Sykes,* with whom were *Dickerson, Nice & Sokol,* and *Emanuel E. Horn* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff-appellant, Rhone, was injured on December 23, 1958, when he was struck by an automobile owned and operated by the defendant-appellee, Fisher. Fisher admitted liability and the case was accordingly tried on the question of damages. After a three-day trial, the jury returned a verdict in favor of Rhone for $1,500. Rhone appeals from a judgment entered thereon. He claims that there was error in the instructions as to damages, resulting in an inadequate verdict.

There is some question as to whether or not the accident was the proximate cause of a postero-myocardial infarction (death of a part of the heart muscle) which Rhone suffered three days after the accident, but that question is not directly in issue on this appeal.[1] Rhone adduced the testimony of a cardiac specialist that it was, in his opinion, highly probable that there was a causal connection between trauma due to the

---

1. Rhone, a fifty-five year old man, had suffered from shortness of breath since childhood. He had suffered from coronary arteriosclerosis and diabetes for years before the accident. The appellee does contend that the amount of the verdict shows that the jury must have found against the plaintiff on the question of causation. Though this contention is persuasive, we think it is in the realm of argument rather than of demonstration.

accident and the infarction. Rhone claims that the evidence was sufficient to show that injury due to the accident had shortened his life expectancy, and the only such injury which he alleges is the infarction. There is no evidence of any actual loss of earning power of the plaintiff as a result of the accident (assuming the infarction to have been caused thereby) except for three weeks of hospitalization and four weeks of convalescence following his heart attack. On the contrary, he had worked for some months prior to the trial without the loss of a day and at double the pay he was earning at the time of the accident.

The instructions as to damages included one which may be called a standard instruction since it is substantially in the form which has been in use in the State since *Bannon v. Baltimore & Ohio R. Co.,* 24 Md. 108, 116, 125 (1866), and has been repeatedly approved since that case. See *McMahon v. Northern Central Ry. Co.,* 39 Md. 438, 441, 453; *Eyler v. Allegany County Commissioners,* 49 Md. 257, 260-61, 277; *People's Bank v. Morgolofski,* 75 Md. 432, 435, 444, 23 Atl. 1027; *Baltimore Traction Co. v. Wallace,* 77 Md. 435, 437, 442, 26 Atl. 518; *Adams v. Benson,* 208 Md. 261, 271, 117 A. 2d 881. Under this instruction the jury were told that in estimating damages, they were to consider the plaintiff's condition and health prior to the accident as compared with his present condition and health in consequence of the injuries sustained as a result of the accident; his medical and hospital expenses, if any, incurred for treatment of such injuries; to what extent, if any, said injuries disabled him and prevented him from engaging in his usual employment and activities and any loss of earnings suffered thereby; whether the injuries were permanent in nature; to what extent, if at all, they were calculated to disable the plaintiff from engaging in those employments or activities for which, in the absence of such injuries, he would have been qualified; and the physical pain and suffering and mental anguish, if any, to which he had been subjected in the past and might be subjected to in the future as a result of said injuries; and the jury were further instructed that they should allow the plaintiff such damages as, in their opinion, would be a fair and just compensation for said injuries, losses and expenses.

226

The other instruction pertinent to the appellant's contentions reads as follows:

> "I instruct you that even if you should find that the accident was the proximate cause of or precipitated the myocardial infarction suffered by the plaintiff, you may not consider as an element of damage the probable loss in years of life between what you may find Mr. Rhone's life expectancy might have been, were it not for this heart injury, and what you may find his life expectancy to be now as a result of said injury. The law does not permit any recovery for any such foreshortened life expectancy, if there be any. You may, however, consider this evidence in determining the seriousness of the injury and the consequent pain and suffering and the mental anguish, if any, to which the plaintiff has been and will be subjected in the future."

The appellant's first contention here is that the trial court should have instructed the jury that the plaintiff was entitled to recover damages for any shortening of his life expectancy due to an injury sustained as a result of the negligence of the defendant. This appears to be the first time that this court has been called upon to consider that question. Comparatively recent English cases support the appellant's contention. See *Flint v. Lovell* [1935] 1 K. B. 354 (C. A. 1934); *Rose v. Ford* [1937] A. C. 826, reversing [1936] 1 K. B. 90 (C. A. 1935); *Roach v. Yates* [1938] 1 K. B. 256 (C. A. 1937); *Morgan v. Scoulding* [1938] 1 K. B. 786 (1937); *Mills v. Stanway Coaches* [1940] 2 K. B. 334 (C. A. 1940); *Benham v. Gambling* [1941] A. C. 157 (1940).

In *Rose v. Ford, supra,* Lord Roche stated that he felt some anxiety (pp. 859-862) over the question of the assessment of damages, but he seemed willing to leave the matter to the trier of the facts as one of the elements to be included in arriving at a lump sum verdict. He conceded that discussion of the matter "leads into paths of abstruse thought and technicalities of the law far remote from the practical directions which judges will have to give to themselves and to juries

for the purposes of determining questions of amount." He also feared that "this element of damage [might] * * * assume a frequency and a prominence in litigation far greater than is warranted in fact" and might result in the inflation of damages in undeserving cases and that this might work to the detriment of deserving cases; but he expressed confidence in the good sense of judges and juries in dealing with the problem.

Less than four years later, when *Benham v. Gambling, supra,* was decided these matters which had concerned Lord Roche (who by then had retired) seem to have become more, rather than less, acute. The views of the House of Lords were expressed by Viscount Simon, L. C., each of his colleagues who participated in the case merely stating his concurrence. There the actual question for decision was whether an award of £1200 damages for shortening the life of a child two and a half years old, who died as a result of injuries sustained in an automobile collision due to the defendant's negligence, should be sustained or reduced.[2] The decision was that this award should be reduced to £200. The problems and difficulties of "indicating what are the main considerations to be borne in mind in assessing damages under this head" are rather extensively explored.

Viscount Simon first discarded the statistical or actuarial test, because it was based on a "vast mass of vital statistics" giving a figure which would not necessarily be properly attributable to any given individual (an observation which seems very pertinent to our present case).[3] He went on to say: "And in any case the thing to be valued is not the prospect of length of days, but the prospect of a predominantly happy life." Variables due to age and the ups and downs of life were recognized, and the Lord Chancellor said that it "would be fallacious to assume * * * that all human life is continuously an enjoyable thing, so that the shortening of it calls for compensation * * * on a quantitative basis." He further said: "The question thus resolves itself into that of fix-

---

2. The cause of action survived under a statute enacted in 1934.
3. We assume, but do not decide, that the evidence of shortening of the plaintiff's life was enough to go to the jury.

ing a reasonable figure by way of damages for the loss of a measure of prospective happiness. Such a problem might seem more suitable for discussion in an essay on Aristotelian ethics than in the judgment of a court of law, but in view of the earlier authorities we must do our best to contribute to its solution." He also stated that the test was not subjective, that the right sum to be awarded depended on an objective estimate of what kind of future on earth the victim might have enjoyed, whether or not the victim himself had justly estimated that future or not. Financial losses or gains during the lost years were to be disregarded, he said, and added: "The damages are in respect of loss of life, not of loss of future pecuniary prospects."

Viscount Simon further said (p. 168): "The truth, of course, is that in putting a money value on the prospective balance of happiness in years that the deceased might otherwise have lived, the jury or judge is attempting to equate incommensurables." He reached "the conclusion that in assessing damages under this head, whether in the case of a child or an adult, very moderate figures should be chosen." His last comment on the determination of damages for the shortening of a plaintiff-victim's life was this: "I trust that the views of this House, expressed in dealing with the present appeal, may help to set a lower standard of measurement than has hitherto prevailed for what is in fact incapable of being measured in coin of the realm with any approach to real accuracy."

It appears that this admonition has been heeded, for a note entitled "Assessment of Damages in Fatal Accidents", 100 L. J. 312, indicates that the English courts currently restrict the extent of damages for the shortening of life expectancy to small flat sums. On the basis of *Benham v. Gambling, supra,* and the note just referred to, it seems to us that the English authorities now support the appellant's contention more in theory than in fact. See Judge Wyzanski's Comment in *O'Leary v. U. S. Lines Co.,* 111 F. Supp. 745, 747 (D., Mass., 1953) that the English rule "has not proved to be entirely satisfactory in England" and had been "so modified in practice that only small flat sums are now allowed."

We recognize that there is some persuasiveness in the contention that the shortening of one's life by the negligent act of another should give the victim a right of recovery against the wrongdoer for that element of damage. The experience of the English courts with a rule permitting such recovery as a separate element of damages, as evidenced by *Benham v. Gambling, supra,* shows the extreme difficulty of stating or developing any satisfactory rule for the measurement of damages for such a wrong, and appears to have resulted in the rule being relegated to a matter of form, rather than substance, with a maximum allowance therefor in practice of about $1,400.

The experience of the English courts with the rule and the virtual emasculation thereof which has evolved from that experience, as well as the rather ephemeral considerations which must be taken into account under it, and also the possible duplication or overlapping of compensation under this and other heads of damages (a possibility which Roche, L. J. thought had become in large part an actuality in *Flint v. Lovell, supra*) do not commend the English rule to us as one for adoption in this State.

We find no compelling ground for adopting this new rule of damages which is at variance with what seems to have been long accepted here. Though we think it true that this is the first case in which this court has been directly asked to adopt lost years of life expectancy as a separate element of damages in a negligence case, that very fact suggests that the law has long been considered to be otherwise. The view that it would involve substantial change is supported, we think, both by the length of time that the so-called standard damage instruction dating from *Bannon v. Baltimore & Ohio R. Co., supra,* decided in 1866, has been in use, and by the views expressed by this court in cases of negligence causing death in which the decedent's cause of action survived to his executor or administrator after and by reason of the adoption of Sec. 104 of Art. 93 of the Code of 1888 (since embodied in subsequent Codes and now constituting Sec. 112 of Art. 93 of the 1957 Ed.) and by the damages customarily sought and allowed in such cases. Such damages (apart from funeral expenses first allowed under Ch. 127 of the Acts of 1937)

have, we believe, customarily covered "compensation for the pain and suffering endured by the deceased, his loss of time and his expenses between the time of his injury and the [time of] his death."

Damages recoverable under the above survival of action statute (other than those for funeral expenses) are limited to such damages as might have been recovered by the deceased himself had he survived the injury and brought the action. They differ both as to basis, persons entitled thereto, and amounts recoverable from those recoverable under our equivalent of Lord Campbell's Act (Code (1860), Art. 65; Code (1888 and subsequent Editions), Art. 67), and are independently recoverable. *Stewart v. United Electric Light & Power Co.,* 104 Md. 332, 65 Atl. 49; *Keyser v. Richards,* 148 Md. 669, 677, 130 Atl. 41; *Tri-State Poultry Cooperative, Inc. v. Carey,* 190 Md. 116, 125, 57 A. 2d 812. Cf. *Washington, B. & A. R. Co. v. State,* 136 Md. 103, 111 Atl. 164; and *Melitch v. United Rys. & Elec. Co.,* 121 Md. 457, 88 Atl. 229 (distinguishing the *Stewart* case and holding that a full settlement by the decedent during his lifetime barred a suit brought after his death under Lord Campbell's Act).

*Stewart v. United Elec. Lt. & P. Co., supra,* enumerates the items (other than funeral expenses subsequently authorized) for which the executor or administrator can recover under the survival of action statute above cited as those which we have stated in quotation marks in the second paragraph above (the quotation being from the *Stewart* case, 104 Md., at 343), and states (ibid.) that said damages are "limited" to those enumerated. Conspicuously absent from that enumeration of items for which the victim himself could have recovered damages and which would therefore survive, is any claim based upon the shortening of his life.

We are of the opinion that the trial court was correct in refusing to instruct the jury that damages should be allowed for the shortening of the plaintiff's life (if the jury should find that the defendant's negligence caused such shortening). This holding, though the specific point is novel in this court, is, we believe, in accord with long established practice here and with American authority generally. All of the American

cases in point of which we are informed, some of which antedate *Flint v. Lovell, supra,* have specifically disapproved of an allowance of damages for the shortening of life (apart at least from mental suffering resulting from knowledge of the shortening or lost earnings for lost years). See *Farrington v. Stoddard,* 115 F. 2d 96, 100 (C. A. 1st) ; *O'Leary v. U. S. Lines Co., supra; Lake Erie & W. R. Co. v. Johnson,* 191 Ind. 479, 483-484, 133 N. E. 732; *Richmond Gas Co. v. Baker,* 146 Ind. 600, 609, 45 N. E. 1049; *Krakowski v. Aurora, E. & C. Ry. Co.,* 167 Ill. App. 469, 476; *Ham v. Maine-New Hampshire Interstate Bridge Authority,* 92 N. H. 268, 275-76, 30 A. 2d 1; *Ramsdell v. Grady,* 97 Me. 319, 322, 54 Atl. 763; Notes, 97 A.L.R. 823, 131 A.L.R. 1351. See also 4 Sutherland, *Damages* (4th Ed. 1916), § 1241; Conway, *Damages for Shortened Life,* 10 Ford L. Rev. 219, 231 (1941); Developments in the Law—Damages—1935-1947, 61 Harv. L. Rev. 113, 143-144. See *contra,* Hannigan, *Recent English Decisions in Damages for Injuries Ending in Premature Death,* 18 B. U. L. Rev. 275 (1938), who approved *Flint v. Lovell, supra,* but conceded that no American case had recognized its doctrine.

> As stated by Sutherland, *op. cit.,* at Section 1241, p. 4655 :
> "If the condition of a person injured is such that a shortening of life may be apprehended this may be considered in determining the extent of the injury, the consequent disability to earn a living, and the bodily and mental suffering which will result. But damages cannot be recovered for the loss or shortening of life. 'The value of human life cannot, as adjudged by the common law, be measured in money. It is besides inconceivable that one could thus be compensated for the loss or shortening of his own life.' "

In the instant case, the trial court's instructions with regard to the shortening of life were in accord with the passage just quoted. They told the jurors that they might consider the evidence relating to the shortening of life "in considering the seriousness of the injury and the consequent pain and suffer-

ing and the mental anguish, if any, to which the plaintiff has been and will be subjected in the future." This specific instruction, together with the general instruction as to damages, was, we think, as favorable to the plaintiff as any instruction to which he might have been entitled with regard to the shortening of life, and he is therefore in no position to complain of the instructions given. It embraced any mental anguish which he may have suffered through knowledge or contemplation of the shortening of his life. Any further attempt to include the lost years as a separate element of damage would, we think, have been very likely to result in the duplication of an award on this account, and was properly refused.

There are two other contentions which the appellant undertakes to urge on this appeal. One is that the jury should have been instructed that he was entitled to damages for lost earnings during the lost years. Quite apart from the question of the sufficiency of the evidence to establish any accurate basis for their computation, or even to prove actual shortening of life (questions which are forcefully raised by the appellee), and quite apart from whether the desired instruction took into account the essentials of a proper charge on this subject (as to which see McCormick on *Damages,* pp. 303-305, and Comment, *The Measure of Damages for a Shortened Life,* 22 U. of Chi. L. Rev. 505), we think that this contention is not properly before us and we, therefore, do not reach the question of its legal soundness. In presenting objections to the court's charge, one of the appellant's counsel stated his exception as being to the refusal of the court to instruct that damages might be awarded for the lost years, and when the court inquired whether this was based on the lost earnings for those years, he replied, "No sir, more than that, for the lost years themselves." This, we think, clearly failed to raise —indeed excluded—loss of earnings for the lost years as a ground of objection to the instructions, and this question is therefore not reviewable by us. Maryland Rule 554 d and e; *State Roads Com'n v. Berry,* 208 Md. 461, 469, 118 A. 2d 649; *Ridgely v. Beatty,* 222 Md. 76, 85, 159 A. 2d 651; *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 612, 143 A. 2d 627; *Belt's Wharf Warehouses v. International Products*

*Corp.,* 213 Md. 585, 591-592, 132 A. 2d 588, and cases there cited.

The other (and last) of the appellant's contentions is, as stated in this court, that the trial court "erred in refusing to charge the jury that it could consider the loss of life expectancy of the plaintiff in determining the plaintiff's disability to earn a living in the future." Again without considering the sufficiency of the evidence to support such an instruction, and without considering the soundness of the appellant's proposition as now asserted, we think that the appellant's objection to the charge on this score, as interposed by his other counsel, was insufficient to present the question for review here. After one statement of the objection which was not clear to the trial judge (and is not clear to us), counsel urged that the jury "may consider the shortened life expectancy as relevant to determining whether he [the plaintiff] will be disabled in the future." In response to a question from the court he related this to the period during which the plaintiff would live. Even with this explanation, the trial judge said that he did not see the connection and declined to give such a charge. We, too, fail to see the connection as the exception was stated, and think that the refusal of the trial court to give such a charge was correct.

Even if we were to assume that this objection sufficiently and in substance complained that the jury should have been instructed that the shortening of the plaintiff's life curtailed his ability to earn during the period that he might live, we should find no ground for reversal. We think that the desired instruction would relate to the seriousness of the injury and that this question was adequately covered by the general damage instruction and by the specific instruction with regard to the extent to which shortening of life might be considered, to which we have already referred at length. That would be sufficient. Maryland Rule 554 b; *Arundel Corp. v. Jasper,* 219 Md. 519, 529, 150 A. 2d 415; *Casey v. Roman Catholic Archbishop, supra; Barone v. Winebrenner,* 189 Md. 142, 145, 55 A. 2d 505; *Bethlehem-Sparrows Point Shipyard v. Scherpenisse,* 187 Md. 375, 381, 50 A. 2d 256; *Larkin v. Smith,* 183 Md. 274, 284, 37 A. 2d 340, and *Feinglos v. Weiner,* 181 Md. 38, 47, 28 A. 2d 577.

234

For the reasons above stated the judgment of the trial court is affirmed, with costs to the appellee.

*Judgment affirmed, with costs to the appellee.*