Shaw, C. J.
These are two actions brought by administrators, to recover damages under the statute, for injuries done to the persons of their intestates, by the railroad cars of the defendants. St. 1842, c. 89, § 1.
In the latter case, the plaintiff’s intestate was riding in a wagon, on a highway, across the railroad, when the wagon was struck by the cars and the rider was instantly killed. The writ contained a count for the injury to the wagon, but that was withdrawn by agreement of parties, and the plaintiff’s counsel then stating that he expected to prove that the intestate died instantaneously from the effects of the collision, the presiding judge directed the jury to find for the defendants, which they accordingly did.
The other case is very similar to the one just described. The person injured there was a female, of the name of Ann Kearney, who was crossing the railroad, in Boston, upon a public highway or footway, when she was thrown down by *109 the cars. The train passed over her side. A girl, who was standing in the doorway of a house, less than two rods from the place of the accident, saw her run over, and immediately ran to her. She saw her move her hands and feet slightly; but the deceased breathed only once after the arrival of the witness and gave no sign of consciousness. This witness then ran back towards the house, and, on her way, met another witness, who went with her to the fatal spot. The latter testified, that the deceased might have stirred a little after she arrived, but she showed no other sign of life, and appeared to be dead. The court, considering this also to be a case where the death was instantaneous, ruled that the action could not be maintained, and so instructed the jury, who thereupon returned a verdict for the defendants.
If these rulings and instructions were wrong, the verdicts are to be set aside, and new trials granted in both cases.
The question is, if these actions can be maintained. They could not at common law, because no actions for injury to the person survive the death of the person receiving them, and because the death of a human being cannot be complained of as an injury to third parties. This last point was decided in the cases of Carey and wife v. The Berkshire Railroad Co., and Skinner v. The Housatonic Railroad Co., 1 Cush. 475. The same point had been previously decided at a nisi prius term, of this court, in "Worcester, and was reserved for the whole court, but never brought before it. That was a remarkable case in some of its circumstances. A father and his son had married a mother and her daughter. The latter, the two wives, were riding together, and were killed by collision with a train of cars. The husbands brought their actions fox damages for the loss of their wives, and the court ruled that the actions were not maintainable.
The point in this case depends upon the construction of the statute of 1842, c. 89, § 1: “ The action of trespass on the case, for damage to the person, shall hereafter survive, so that, in the event of the death of any person entitled to bring such action, or liable thereto, the same may be prosecuted or defended, by or against his executor or administrator, in the same manner as if he were living.”
*110 The statute supposes the party deceased to have been once entitled to bring an action for damages for the injury, and either to have commenced the action and subsequently died, or, being entitled to bring it, to have died before exercising that right. The question is, whether the provision cited applies to the cases before us. In the first case, where the casualty relied on as the cause of action, and the death of the party injured, were simultaneous, it seems clear that the right of action cannot survive. The case contemplated by the statute must be of such a nature that the party injured must himself have, at sometime, had a cause of action.
The cause of action must accrue during the lifetime of the party injured. Here there was no time, during the life of the intestate, at which a cause of action could accrue, because the life closed with the accident, from which a cause of action would have otherwise accrued.
A distinction is to be taken between cases thus brought by executors or administrators of the person injured, and cases where persons sue, who claim that their own rights have been infringed.
In the other case, there is somewhat more of difficulty, because there was, there, some slight manifestation of life after the injury. It cannot be pronounced so confidently, that the intestate did not survive at all, or that the death was equally instantaneous. This gives rise to a difficult question. What constitutes that termination or period of life, which is necessary to give the party’s representatives a right of action ? It is not necessary to go into a minute, metaphysical discussion of the question. We are to ascertain what the intent of the legislature was, when they passed the law. It is not to be supposed that they intended, to make a distinction between a case where the death was so instantaneous that there was no manifestation of life whatever, and a case where there might be some slight spasmodic action of the body of the sufferer, to indicate that life was not quite extinct. That, we think, was not their intent. The distinction between life and death frequently depends upon the nature of the question before the court. In an indictment for homicide, for instance, *111 if it were alleged that a mortal blow was given, and that, from its effects, the person struck instantly died, and the proof was that he died as nearly instantaneously as this woman when the cars passed over her, there is no doubt that such proof would sustain the allegation. In other cases, it has frequently been necessary to investigate very closely, and with the most minute accuracy, the circumstances of the decease of individuals, with reference to the exact moment of their death, relatively to each other. As where the right to an inheritance has depended upon the question, whether a parent or his child died first. The civil law, or, at least, the modern French law, provides certain arbitrary presumptions in such cases, founded on certain general principles of physiology. Where the question is between father and son, the father is supposed to be the more vigorous, up to the age of sixty years, and, after that period, the son, if he has arrived at the age of maturity. In England, where a father and son perished on the same gallows, evidence of all the circumstances affecting the question was allowed to be' introduced; the slightest possible incidents were seized upon, and it was considered very important to ascertain which of the two appeared to struggle the longest. A far more interesting case was that of a mother and her child, who fell or jumped overboard at the same instant, from a shipwrecked vessel; the child being in the mother’s arms. There, the law, recognizing the strong and deep-seated tenderness of the heart of a mother for her offspring, presumed that she held her child above water until her own breath was gone, and that, therefore, the child probably lived the longer of the two, thus reversing the rule derived from the relative strength of the father and son. But these are curious and speculative questions, having little direct bearing on the present case. In all of them, it became absolutely necessary to ascertain the relative duration of life, between two persons, one of whom, in contemplation of law, must have survived the other. The case before us, however, does not require these minute investigations. The statute must have a prac^ tical construction, and supposes a case where a cause of action accrued to the injured party in his lifetime, which, by *112 force of the statute in question, devolved upon and vested in his personal representative, at his decease afterwards.
It was suggested that a person might receive a mortal blow, and still survive, in a comatose state, for weeks, or even months, without any thing that could be called consciousness. Such a thing may be possible, but it is not necessary to take it into consideration here. It is no question, how a right of action, devolved on him by operation of law, requiring no act or assent from, could have been presumed; the sole question is whether it accrued, and this depends on the question whether he survived. This case must be decided according to plain common sense, and the true meaning of the act. The question is, was the death instantaneous, or did the party injured live after the accident happened ? It is in evidence, that there was only a momentary, spasmodic struggle, and the death instantaneous. This case must, therefore, follow the same rule with the other. There was no evidence for the jury which was competent to maintain the action; and the judge did right in so directing them. If left in doubt by the evidence, it would be a question of fact for the jury.
Judgment must be entered for the defendants, on the verdict, in both cases. Judgment for the defendants.