F. W. ROHLFING, ADMINISTRATOR OF THE ESTATE OF GEORGE A. GROVER, DECEASED *v.* MOSES AKIONA, LTD., A HAWAII CORPORATION, AND CITY AND COUNTY OF HONOLULU, A MUNICIPAL CORPORATION.

No. 4136.

NOVEMBER 28, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ AND LEWIS, JJ., AND CIRCUIT JUDGE HAWKINS ASSIGNED BY REASON OF VACANCY.

374

OPINION OF THE COURT BY LEWIS, J.

This is an appeal by the administrator of an estate whose complaint under R.L.H. 1955, § 246-6,[1] was dis-

---

[1] "Sec. 246-6. *Survival of actions.* A cause of action arising out of a wrongful act, neglect or default, except actions for defamation and malicious prosecution, shall not abate by reason of the death of the injured person. Such action shall survive in favor of the legal representative of such person and any damage recovered shall form part of the estate of the deceased."

missed on motion of defendants under H.R.C.P., Rule 12(b), for failure to state a claim upon which relief can be granted. The complaint alleged that plaintiff's intestate, four years of age, fell into a water hole and was drowned through the carelessness of defendant Moses Akiona, Ltd., a contractor for the other defendant, City and County of Honolulu.

The trial court was of the view that when a person is injured and then dies the cause of action survives under R.L.H. 1955, § 246-6, but that it was not the intention of the legislature that this statute apply in the case of instantaneous death; further, that death by drowning is instantaneous or so nearly so as to be in law treated as instantaneous death. The complaint having been dismissed accordingly, this appeal from the judgment of dismissal presents the question whether the administrator of an estate can sue under R.L.H. 1955, § 246-6, in a case of death by drowning. For reasons which will appear, we shall assume for present purposes that death by drowning is "instantaneous." We will examine that matter more closely at a later point in the opinion, when we consider the claim for damages for pain and suffering of plaintiff's intestate.

Prior to the enactment of section 246-6 by S.L. 1955, Act 205, the common law rule *actio personalis moritur cum persona* applied in this jurisdiction. See *Bishop* v. *Lokana*, 6 Haw. 556 (Decision of Judd, C. J.) (1885); *City and County* v. *Sherretz*, 42 Haw. 177 (1957). However, there was and had been since 1923 a statute of the Lord Campbell's Act type,[2] now R.L.H. 1955, § 246-2,[3]

---

[2] Throughout this opinion, references to statutes of "the Lord Campbell's Act type" signify statutes giving a right of action, to or for the benefit of beneficiaries of a specified class, for damages for the death of another, caused by the wrongful act of defendant. However, these statutes differ widely in their provisions. See 16 Am. Jur., *Death*, § 49.

[3] R.L.H. 1955, § 246-2, as last amended by S.L. 1955, Act 205, reads:

which prior to 1955 provided only for suit by dependents. Moreover, there had been since the decision in *Kake* v. *Horton* in 1860, 2 Haw. 209, a nonstatutory right of recovery on the part of persons, standing in certain legal relationship to the decedent (See *Hall* v. *Kennedy,* 27 Haw. 626 (1923)), for the damages sustained by themselves; this rule of *Kake* v. *Horton* had not been superseded by the last mentioned statute, as held in *Gabriel* v. *Margah,* 37 Haw. 571 (1947). Act 205, S.L. 1955, which enacted the provision for survival of actions, now section 246-6, also made extensive amendments of the 1923 statute so as to broaden its coverage in the light of *Gabriel* v. *Margah, supra.* (House Journal 1955, Stand. Com. Rep. 581, p. 772). The present action embraces no claim under the amended 1923 statute, section 246-2.

Defendants contend that section 246-6 is not applicable when an injury results in death, and that section 246-2 affords the only remedy in such a case. It is our

"Sec. 246-2. *Death by wrongful act.* When the death of a person is caused by the wrongful act, neglect or default of any person or corporation, the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action against the person or corporation causing the death or against such person or corporation responsible for such death, on behalf of the persons hereinafter enumerated.

"In any such action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including (a) loss of society, companionship, comfort, consortium or protection, (b) loss of marital care, attention, advice or counsel, (c) loss of filial care or attention or (d) loss of parental care, training, guidance or education suffered as a result of the death of the person by the surviving spouse, children, father, mother, and by any person wholly or partly dependent upon the deceased person. The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict or judgment, and any damage recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased. If an action is brought pursuant to this section and a separate action brought pursuant to section 246-6, such actions may be consolidated for trial on the motion of any interested party, and a separate verdict, report or decision may be rendered as to each right of action. Any action brought under this section shall be commenced within two years from the date of death of such injured person."

view, however, that section 246-6 is not limited to the case in which death ensues from some cause other than the wrongful act complained of. 1 Am. Jur., *Abatement and Revival*, § 135. The words "by reason of the death of the injured person" are plain. Moreover, the statute is not limited to the revival of an action commenced during the lifetime of the injured person. While the words "shall not abate" in the first sentence are not the best form of expression, nevertheless when these words are read with the words "A cause of action" also used in that sentence, and with the words "shall survive" in the second sentence, it is clear that the survival of the cause of action itself is provided for by this section.

This still leaves the question what cause of action there is that can survive in a case like the present one. Plaintiff concedes that under R.L.H. 1955, § 246-6, there survives in favor of the legal representative only such cause of action as decedent himself had at the time of his death. We therefore must determine what claim was vested in the decedent at the moment of his death.

This question came before the House of Lords in *Rose* v. *Ford* (1937) A.C. 826. Two years earlier, in *Flint* v. *Lovell* (1935) 1 K.B. 354, the Court of Appeal had held that a plaintiff injured in an accident might recover not only for his pain and suffering and for his mental disquietude through the prospect of an early death, but also for the substantial shortening of his life shown by medical testimony to be a reasonable certainty. No loss of earnings was involved. The later case, *Rose* v. *Ford,* was brought under the survival statute, the Law Reform (Miscellaneous Provisions) Act, 1934. *Flint* v. *Lovell* was approved, and it was held that the principle of that case should have been applied. The opinions rendered by four of the five Lord Justices brought out the following points, among others:

1. The principle of *Baker* v. *Bolton,* enunciated in 1 Camp. 493, 170 Eng. Rep. 1033 (1808), accepted by the House of Lords in the case of *The Amerika,* (1917) A.C. 38, was illogical. In *Baker* v. *Bolton* it had been affirmed that: "In a civil court, the death of a human being could not be complained of as an injury * * *." This principle had been applied only to a claim for damages to a third person because of some other person's death from a tortious injury, and in *Rose* v. *Ford* it was held that it was not to be extended to the case of an injured person damnified by having cut short the period during which he had a normal expectation of enjoying life.

2. A living person could claim damages for loss of expectation of life, and that right, which was vested in him in life, on his death passed to his personal representative. When the principle *actio personalis moritur cum persona* was abolished by statute there no longer was anything to prevent a recovery. Only that principle had prevented the personal representative from suing previously; the other doctrine that the death of a person did not give a claim for damages, applied in *Baker* v. *Bolton* where a husband was claiming damages for the loss of his wife, never did apply to the injured person's own claim, since the personal representative was altogether prevented from suing prior to the survival statute.

3. The survival statute there involved, which was expressly limited to causes of action vested in the decedent upon his death, applied upon the foregoing reasoning.

The rule of *Rose* v. *Ford* was applied in a case of simultaneous death in *Morgan* v. *Scoulding* (1938) 1 K.B. 786. It was applied in the case of a child two and a half years of age, who died the same day as the accident, in *Benham* v. *Gambling* (1941) A.C. 157, the award of damages being less, however, because of the uncertainty of the child's future.

In the United States *Baker* v. *Bolton* attained a pre-eminence that the case never attained in England, being extended in many states to the case of the injured person himself. Thus in *Krakowski* v. *Aurora, Elgin & Chicago R.R.,* 167 Ill. App. 469 (1912), judgment for plaintiff was reversed because he had been permitted to show that the injury would shorten his life and the jury was not instructed as to the "correct bearing" of this evidence, the appellate court being of the view "that appellee could not recover for the loss of any portion of his life by reason of such injuries, * * * nor for any wages or earnings he might be able to make during such portion of his lost life * * *." (p. 476). This proposition was based on *Baker* v. *Bolton* and related cases, and upon the maxim *actio personalis moritur cum persona* (p. 472). See also *Richmond Gas Co.* v. *Baker,* 146 Ind. 600, 45 N.E. 1049 (1897).

Insofar as lost earnings are concerned, the principle of *Krakowski* is not acceptable to us for reasons stated below. Courts which follow the case do not necessarily do so as to loss of earnings due to shortened life expectancy, this being a separate question as illustrated by *Rhone* v. *Fisher,* 224 Md. 223, 232, 167 A.2d 773, 779. At this point it is pertinent to note that some courts have approached the question involved in *Krakowski* from a different angle. These courts have reasoned from the premise that a defendant may not be permitted to show the imminence of death in mitigation of damages in an action brought by the injured person who still lives. As stated in *West* v. *Boston & Maine R.R.,* 81 N.H. 522, 129 Atl. 768, 771, 42 A.L.R. 176, 183:

"* * * 'To admit such an answer [that life has been shortened] is going a step beyond refusing compensation for loss of life. It is permitting a defendant to assert the excessiveness of his own tort to escape pay-

ing full compensation for the injury. This should not be permitted. If not permitted in an action by the injured party, it should not be allowed in an action by his legal representative.' Olivier v. Houghton Street Railway Co., 138 Mich. 244, 101 N.W. 530.

\* \* \*

"A plaintiff is entitled to recover for loss of earning capacity for the remainder of his life. He owned that right for the balance of his days. If the suit is tried in his lifetime, his expectation of life is used in computation of the damages. If the trial is after death, the period of his life is fixed, and the defendant contends that recovery for loss of earning capacity is limited accordingly. If death ensued from some independent cause the claim would be well founded. But when it has been caused by the defendant's wrong, the anomalous situation is presented that, if the argument is sound, the defendant takes an advantage from its own wrong. The question is not whether the administrator can recover for his decedent's death, but whether that death, caused by the defendant's wrong, can be used to cut down damages otherwise recoverable."

However, in some cases the interpretation of the survival statute has been influenced by the assumption that at common law, under the rule of *Baker* v. *Bolton* as well as under the maxim *actio personalis moritur cum persona,* an injured person had no cause of action for the shortening of his life but only for the damages suffered while he still lived. If in the judgment of the court the survival statute abolished both these rules, the personal representative was held entitled to sue even in the case of instantaneous death. See *Broughel* v. *Southern New England Telephone Co.,* 72 Conn. 617, 622, 45 Atl. 435, 437, reversing and remanding for ascertainment of damages; 73 Conn.

614, 48 Atl. 751, affirming after a further trial at which the trial court took as the measure of damages "the value at the time of the injuries of the deceased's life to himself." As stated in the first of these opinions: "This legislation in effect, sets aside, in this class of cases, the rule expressed in the maxim, '*Actio personalis moritur cum persona.*' * * * Furthermore, this legislation, in this class of cases, sets aside the other rule of the common law, which prevented the recovery of damages for mere loss of life."

However, some statutes were so interpreted as to abolish solely the maxim *actio personalis moritur cum persona,* with the result that there could be no action for instantaneous death. Under that interpretation, in order for the survival statute to apply the injured person must live after the accident. As aptly stated in *Goodsell* v. *Hartford & New Haven R.R.,* 33 Conn. 51, 55: "By a strange fiction the extremity of the wrong precludes redress." Thus in *Kearney* v. *Boston & Worcester R.R.,* 63 Mass. (9 Cush.) 108, 110, the court reasoned in a case of instantaneous death: "Here there was no time, during the life of the intestate, at which a cause of action could accrue, because the life closed with the accident, from which a cause of action would have otherwise accrued." See also *Hollenbeck* v. *Berkshire R.R.,* 63 Mass. (9 Cush.) 478; *Bancroft* v. *Boston & Worcester R.R.,* 93 Mass 34 (1865); *cf., Murphy* v. *New York & New Haven R.R.,* 30 Conn. 184, 189, cited in *Broughel* v. *Southern New England Telephone Co., supra* at 624.

Many states have both a statute of the type of Lord Campbell's Act and also a survival statute; our own is one of these. In that situation, some courts will take cognizance of the wrongful cause of the death in the first type of action, but in a suit under the Survival Act will cut off the damages at the date of death just as if the

death had been from a normal cause. Such are the Ohio decisions on which defendants rely. See *Allen* v. *Burdette*, 139 Ohio St. 208, 39 N.E.2d 153 (1942), and the earlier cases of *Mahoning Valley Ry.* v. *Van Alstine*, 77 Ohio St. 395, 83 N.E. 601 (1908), and *May Coal Co.* v. *Robinette*, 120 Ohio St. 110, 165 N.E. 576 (1929). See also *Farrington* v. *Stoddard*, 115 F.2d 96, 100 (1st Cir. 1940), an action under the Maine survival statute.

This however is not our approach. *Baker* v. *Bolton* was rejected in this jurisdiction one hundred years ago. *Kake* v. *Horton, supra.* Thus, upon the enactment of the survival statute abolishing the rule *actio personalis moritur cum persona* the only remaining obstacle to suit was removed, and the death of the injured person operated to transfer to the personal representative the claim which the deceased had on account of the injury though death itself was the result. This is confirmed by House Stand. Com. Rep. 581 on H.B. 588 of the Regular Session of 1955, which became Act 205, S.L. 1955 (House Journal 1955, p. 772) in which it was stated as to the survival statute:

" * * * the survival of the right of action is limited to only actions arising out of physical injury or death." (p. 773)

Under the survival statute, the death is to be viewed not as an event which creates a cause of action but instead as "one of the harmful results of the wrongful act." *Kling* v. *Torello*, 87 Conn. 301, 87 Atl. 987 (1913). As well stated in the cited case:

" * * * The right of recovery for the death which our statute gives is not one which is independent of or unrelated to the right of action which was in the deceased at his death. Our statute is framed upon an entirely different theory, and effectuates quite a different policy. Goodsell v. R.R., 33 Conn. 51, 55. The right

of action which the executor or administrator is permitted to pursue is not one which springs from the death. It is one which comes to the representative by survival. The right of recovery for the death is as for one of the consequences of the wrong inflicted upon the decedent. The amount of recovery is determined from the standpoint of the deceased, and not from that of the statutory beneficiaries. Its measure, within the statutory limitation, is the value of life to him whose life has been cut off. Broughel v. S. N. E. Tel. Co., 73 Conn. 614, 620, 48 Atl. 751, 84 Am. St. Rep. 176." (p. 988)

Hence, under the survival statute the cause of action arises out of *the injury*. The injury may manifest itself in the loss of life instantly or subsequently, but the loss of life is not what gives rise to the cause of action. In contrast, an action under section 246-2 arises out of the death. This appears upon consideration of the language of R.L.H. 1955, §§ 246-3, 4 and 5.

It has been argued that the rule of *Kake* v. *Horton* is limited to the cause of action arising upon the death of an injured person in favor of a person standing in a certain legal relationship to decedent and that the case is without significance here. We cannot accept that line of reasoning.

In *Kake* v. *Horton,* Justice Robertson spoke of the rule that "the *death of a human being* could not be complained of as an injury" as "the old harsh rule" and as an "obstacle," and removed that obstacle "consonant with natural law and reason." 2 Haw. at 211-12). This was prior to S.L. 1892, c. 57, § 5, which as amended, is now R.L.H. 1955, § 1-1. Before that statute the court, under C. C. 1859, § 14, was unfettered by the English common law, and the rule was as follows: "We do not regard the Common Law of England as being in force here *eo nomine*

and as a whole. Its principles and provisions are in force so far as they have been expressly, or by necessary implication, incorporated into our laws by enactment of the Legislature; or have been adopted by the rulings of the Courts of Record; or have become a part of the common law of this Kingdom by universal usage; but no farther." *Kake* v. *Horton, supra* at 211; *Branca* v. *Makuakane,* 13 Haw. 499, 505 (1901). It was during that period that *Baker* v. *Bolton* was rejected. In 1892, effective January 1, 1893, the common law was adopted by the statute now R.L.H. 1955, § 1-1, *supra*. However, that statute, which provided that: "The common law of England, as ascertained by English and American decisions, is hereby declared to be the common law * * * in all cases," was subject to an exception expressed as follows, "except as otherwise * * * fixed by Hawaiian judicial precedent." As a result, a common law principle rejected before 1893 did not become part of the Hawaiian common law. See, for example, *Estate of Holt,* 19 Haw. 78 (1908), pointing out that the Rule in Shelley's Case was rejected in *Thurston* v. *Allen,* 8 Haw. 392 (Feb. 1892) and accordingly is not part of our common law. Moreover, the exception has been deemed to embrace not only the exact point decided before 1893 but also other applications of the rejected principle. *Mossman* v. *Hawaiian Government,* 10 Haw. 421, 436 (1896); *Rooke* v. *Queen's Hospital,* 12 Haw. 375, 380 (1900).

Considering the treatment of *Baker* v. *Bolton* in *Kake* v. *Horton* and by the English courts themselves as well as the legislative history, we must reject any interpretation of section 246-6 which is founded upon the theory that a total injury is any less so because death is the result. The totality of an injury which causes death commands recognition, not to punish the wrongdoer as has been suggested, but on the contrary because the impedi-

ment to the recognition of this fact was removed when the survival statute was enacted.

Approaching the interpretation of the statute from the viewpoint set out above and holding that the survival statute applies even in the case of instantaneous death, we nevertheless must deal with a problem which has received the attention of the courts in every jurisdiction in which statutes of both types exist, and that is the problem of so interpreting the statute as not to permit of a double recovery. We necessarily consider the measure of damages in resolving this problem.

In *Hindmarsh* v. *Sulpho Saline Bath Co.*, 108 Neb. 168, 187 N.W. 806 (1922), another of the cases cited by defendants, the problem of double recovery was given primary attention. The court concluded that "the recovery in the revived action [*i.e.*, recovery by the estate] must be limited to such as the deceased might have recovered, had he lived, but not extending beyond the time of his death." (p. 809). In *St. Louis & S.F.R.R.* v. *Goode*, 42 Okla. 784, 142 Pac. 1185 (1914), on which defendants also rely, many cases are reviewed and the point emphasized that under the survival statute "the damages to the estate begin with the wrong and cease with the death" while under the Lord Campbell's Act type of statute "damages begin with the death." Obviously, some vestige of *Baker* v. *Bolton* remains when, in the survival action, damages are cut off arbitrarily at the date of death just as though death had ensued normally and without regard to the fact that the death was the result of the injury inflicted by the defendant.

Pennsylvania has reached a solution different from that in Ohio and Oklahoma and the other states cited by defendants. It is a solution that, after careful consideration, we find to be the one that best suits our situation. As we have said, the principle that a man has no

right of recovery for the shortening of his own life is not a part of our common law and the legislature, in the enactment of sec. 246-6 in 1955, did not intend to adopt that principle. The legislature did intend to permit a complete recovery. The Pennsylvania case law was enunciated in a changing statutory framework, with the result that there gradually developed principles that do permit a complete recovery.

The first of these cases, *Pennsylvania R.R.* v. *McCloskey's Administrator*, 23 Pa. St. 526 (1854) was decided under the Act of April 15, 1851, sections 18 and 19, which were construed as providing, first, for the continuance of an action commenced by the injured person during his lifetime by his personal representatives after his death, *i.e.*, for revival of the action; second, for recovery in the revived action of "the very damages to which the deceased would have been entitled, had he survived until verdict and judgment"; and, third, that if no action was brought by the injured person during his lifetime an action nevertheless might be brought after his death to recover the same damages, described as "the absolute value of the life lost * * *." This then, as construed, was purely a revival and survival statute. The court said:

> "If the body be all crushed, we have regarded its sufferings as a subject of civil compensation so long as life smoulders beneath the ruins; even though there be no capacity to appreciate or enjoy compensation. We ought not to be startled that the duty of compensation is continued, when such life is smothered out." (p. 531).

*Pennsylvania R.R.* v. *Zebe*, 33 Pa. St. 318 (1858) was decided under an amendment made in 1855, which was construed as "a new and independent right given by positive law—not cast upon them by survivorship as for an injury to the decedent." Under the 1855 amendment the

suit filed after the death was in the nature of a suit under Lord Campbell's Act. See *Gaydos* v. *Domabyl,* 301 Pa. 523, 152 Atl. 549. However, if a suit had been brought by the injured person it could be revived after his death and the measure of damages then was the injury to decedent without any cut-off date by reason of the death. *Maher* v. *Philadelphia Traction Co.,* 181 Pa. St. 391, 37 Atl. 571 (1897). The recovery in the revived action went into the estate and became available to creditors, and in that event no suit could be brought under the Lord Campbell's Act type of statute. *Birch* v. *Pittsburgh, Cincinnati, Chicago & St. Louis Ry.,* 165 Pa. St. 339, 30 Atl. 826 (1895) and *In re Taylor's Estate,* 179 Pa. St. 254, 36 Atl. 230 (1897). Thus at this period both types of statute existed with entirely different measures of damages, but suit could not be brought under both. *Lhota* v. *M. Oppenheimer & Co.,* 247 Pa. St. 280, 93 Atl. 476 (1915).

By an act of July 2, 1937 (S.L. Pennsylvania 1937, c. 563), it was made possible, when no action was brought by the injured person during his lifetime, for his personal representative to bring an action in addition to the Lord Campbell's Act type of action permitted to be brought by the family. This then raised the question of what recovery was permissible in the personal representative's action, considered in *Pezzulli* v. *D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942), *Murray* v. *Philadelphia Transp. Co.,* 359 Pa. 69, 58 A.2d 323 (1948), and *Ferne* v. *Chadderton,* 363 Pa. 191, 69 A.2d 104 (1949). The measure of damages in an administrator's action under the survival statute was determined to be as follows, quoting from the last cited case:

"* * * Under the Survival Statute, 20 P.S. §§ 771, 772, the administratrix was entitled to recover for the loss of decedent's earnings from the time of the acci-

dent until the date of his death, and compensation for his pain and suffering during that period. Recovery may also be had for the present worth of his likely earnings during the period of his life expectancy, but diminished by the amount of the provision he would have made for his wife and children as above stated, thus avoiding duplication. Pezzulli, Administrator v. D'Ambrosia, 344 Pa. 643, 650, 26 A.2d 659, 662, and diminished also by the probable cost of his own maintenance during the time he would likely have lived but for the accident. Murray, Administrator, v. Philadelphia Transportation Co., 359 Pa. 69, 73, 74, 58 A.2d 323, 325." (p. 108)

The measure of damages set out in *Ferne* v. *Chadderton*, above quoted, prevents duplication of damages by taking into account the pecuniary loss recoverable under section 246-2. The recovery of gross earnings would result in overcompensation under the circumstances. See annotations in 7 A.L.R. 1314, part III; 26 A.L.R. 593, *id.;* 163 A.L.R. 253, *id.;* see also 7 A.L.R. 1355; 42 A.L.R. 187.

The family and dependents have a separate cause of action in their own right, as illustrated by *Ferreira* v. *Honolulu Rapid Transit & Land Co.,* 16 Haw. 615, 628 (1905); *Enos* v. *Motor Coach Co.,* 34 Haw. 5 (1936); *Young* v. *Honolulu Construction & Draying Co.,* 34 Haw. 426 (1937); *Gabriel* v. *Margah, supra; Ginoza* v. *Takai Elec. Co.,* 40 Haw. 691 (1955); *cf., Globe Indemnity Co.* v. *Araki,* 32 Haw. 153 (1931); *Kamanu* v. *E. E. Black, Ltd.,* 41 Haw. 442 (1956), and *Costa* v. *Flintkote Co.,* 42 Haw. 518 (1958), concerning the effect of the Workmen's Compensation Act. However, the existence of this right of third persons does not in itself imply that such third persons (the family and dependents) have a right while the injured person lives. *Halberg* v. *Young,* 41 Haw. 634 (1957), 59 A.L.R.2d 445, annotated at 454; *Meredith* v.

*Scruggs,* 244 F.2d 604 (1957), *rev'g* 134 F. Supp. 868. The reason is that the right of recovery of these third persons is for the death, not the injury.

The right of recovery of the injured person is for his injury. Whether an injury inflicts total disability because the injured person lies in a coma while "life smoulders beneath the ruins" (*Pennsylvania R.R.* v. *McCloskey's Administrator, supra*), or total disability because death itself is the result, is a distinction without any legal difference in this jurisdiction, in which *Baker* v. *Bolton* never has been the law. There is no more reason for invoking the "old harsh rule" to cut off the right of recovery of the injured person for his injury than there was for invoking it to prevent third persons from having a right of action for his death. All that is necessary is to recognize, as is done under the Pennsylvania rule, that when the injured person dies instead of being disabled his death eliminates the cost of his maintenance and places the care of his family and dependents on a different basis, with the result that it is only with respect to what we will call the excess earnings that a right to compensation remains, and it is only with respect to this that a right survives in favor of the personal representative. By virtue of this rule the same damages with respect to loss of earnings are recoverable though the victim dies, as would have been recoverable had he lived in a totally incapacitated condition, except as the computation of damages is affected by death from a factual viewpoint. The river of damages which the injured person could have recovered if the injury had been short of death, by reason of his death separates into two streams. The fact of death is not used to "cut down damages" (*cf.,* *West* v. *Boston & Maine R.R.,* above quoted) but instead to measure damages differently.

Many opinions, such as those rendered in *Hindmarsh*

v. *Sulpho Saline Bath Co., supra,* and *Ellis* v. *Brown,* 77 So. 2d 845 (Fla.), start out by reasoning that an injured person in his lifetime could have recovered the present value of his lost earnings for his normal life expectancy. But having reached the impasse that the fact of death must be taken into account, otherwise the right of certain persons to sue for the wrongful death will work a duplication of damages, these courts deny the right to recover anything for the earnings lost by reason of the shortening of the injured person's life. It is our view that this does not have reasonable basis.

The touchstone is the right that was vested in the injured person at the moment of his death. It seems to us that a person mortally wounded cannot have less than the right to the present value of the sum, if any, that with due regard to his own cost of living and the care of his loved ones, would have been at his disposal during his lifetime had he been permitted to live it normally. If that is not a sound proposition then one can with equal justice urge that an injured person, alone in the world, who lies in a coma in a hospital and will never recover from it, has only a right to such sum as will maintain him in the hospital and nothing for lost earnings because, forsooth, he will not in future be able to spend anything; or that in any instance in which a person's earnings are more than he is ever likely to spend in his lifetime there should be no recovery for the excess since it will only go to his heirs anyway.

Under the reasoning of the cases last cited, the proposition we have stated—which for convenience we have called the right to excess earnings—is destroyed by the assumption that the right of the injured person during his lifetime was greater than that, and was a right to the present value of all lost earnings, an assumption however which in the last analysis is not put into practice. Real-

istically, the greater right of the injured person during his lifetime is due to the policy of the law that the totality of the injury shall not be used to cut down the damages, upon the assumption that no proper purpose would be served if the imminence of death were permitted to be shown. If, however, recovery of judgment by the injured person does not bar further suit after death, then the imminence of death must be taken into account even when the suit of the injured person comes to trial during his lifetime. Nevertheless, there would be no good reason for cutting short the earning period and labeling part of it noncompensable injury. All that is necessary is to measure the damages for the injury so as to prevent duplication. See Comment, *The Measure of Damages for a Shortened Life,* 22 U. of Chi. L. Rev. 505.

This leaves unanswered the question what effect should be given to a recovery by the injured person himself in his lifetime. Our statute does not cover that point (*cf.,* the Pennsylvania cases above cited). Should the recovery of damages by a living person be deemed to bar an action by his family for his death? This question has long existed in this jurisdiction. *Cf., Halberg* v. *Young, supra* at 640. Perhaps the legislature will provide an answer before we are called upon to provide one. It is sufficient at this time to point out that even if no bar exists, adoption of a rule that an injured person has no right of recovery for the earnings lost by reason of the shortening of his life would be unreasonable. Adoption of the rule that he has the right of recovery, but with respect to excess earnings only, provides the solution.

However, the application of the Pennsylvania rule has resulted in that State in some excessive verdicts, which have been reduced, or set aside and a new trial ordered. See *Hankins* v. *Mack,* 364 Pa. 417, 72 A.2d 268 (1950); *Fries* v. *Ritter,* 381 Pa. 470, 112 A.2d 189 (1955); *Swartz*

v. *Smokowitz,* 400 Pa. 109, 161 A.2d 330; *Menneti* v. *Evans Construction Co.,* 160 F. Supp. 372, 381, *aff'd on this point* 259 F.2d 367, 371. These excessive verdicts are, we think, partly due to matters upon which we shall now comment. In the first place, present worth tables are not admissible in jury trials in Pennsylvania. *Thirkell* v. *Equitable Gas Co.,* 307 Pa. 377, 161 Atl. 313; *Kowtko* v. *Delaware & Hudson R.R.,* 131 F. Supp. 95, 107 (D.C. Pa.). Instead, the jury determines "present worth" from the trial judge's explanation of the concept, and such concrete illustrations as the trial judge may use. *Littman* v. *Bell Telephone Co.,* 315 Pa. 370, 377, 172 Atl. 687, 690. While this procedure originated out of a desire to avoid calculations based on the assumption of a uniform earning power contrary to the fact (*McCaffrey* v. *Schwartz,* 285 Pa. 561, 572, 132 Atl. 810, 815), it seems to us that it has not worked out in practice. It is no part of the rule that we are adopting. See *Vicksburg & Meridian R.R.* v. *Putnam,* 118 U.S. 545, 554; *Farmers Union Federated Cooperative Shipping Ass'n* v. *McChesney,* 251 F.2d 441, 444 (8th Cir.); *Florida East Coast Ry.* v. *Hayes,* 67 Fla. 101, 64 So. 504, 7 A.L.R. 1310; see also *Ginoza* v. *Takai Elec. Co., supra,* 40 Haw. at 707; *United States* v. *Hayashi,* 282 F.2d 599, 605 (9th Cir.).

In the second place, Pennsylvania like many other states does not include in the wrongful death action the so-called sentimental loss of the beneficiaries. Annot., 74 A.L.R. 11. The absence of express provision for this element of damage is apt to be offset by the indirect introduction of this element into other calculations which, as a result, appear over-generous unless it is realized that the figure includes this element. See *Spangler* v. *Helm's New York-Pittsburgh Motor Express,* 396 Pa. 482, 153 A.2d 490; *cf., Vincent* v. *City of Philadelphia,* 348 Pa. 290, 35 A.2d 65. We have a broad Wrongful Death Act,

R.L.H. 1955, § 246-6, and the sentimental loss will be considered under that act.

Caution should be exercised, moreover, in instructing the jury as to the deductions to be made in determining what we have called the excess earnings. The purpose of these deductions is to eliminate the expenditures for decedent's own cost of living and the care of his family and dependents. In computing such deductions the jury is to assume a standard of living commensurate with the supposed income of decedent. It is to assume that decedent would have enjoyed his life and would have spent accordingly. The deductions are not to be computed at a bare minimum. Otherwise the award under the survival statute, sec. 246-6, would have in it the element of compensation for loss of enjoyment of life. That is not permissible.

In England, it is true, the award under the Survival Act is based on loss of enjoyment of life, but there no allowance is made for loss of future earnings. *Benham* v. *Gambling, supra; Harris* v. *Brights Asphalt Contractors, Ld.,* (1953) 1 Q.B. 617, 634. The measure of damages in the English cases has not been applied in the United States. 61 Harv. L. Rev. 113, 143; Annot., 97 A.L.R. 823, 131 A.L.R. 1351. Our statutes are too different for us to apply the English rule. The legislature, having provided in section 246-2 for sentimental losses and having further provided that there shall be only one action under that section on behalf of all of the persons enumerated therein as entitled to damages, can hardly have intended by section 246-6 to permit a separate award for the loss of the decedent's enjoyment of his own life. Such an award under section 246-6 would be likely to duplicate an award for the sentimental loss under section 246-2, and there would be no deduction from the award under section 246-2 because of the award under section 246-6. See

*O'Leary* v. *United States Lines Co.,* 111 F. Supp. 745, 747.

The legislature has made provision against duplication of damages. By the amendments of sec. 246-2 made by S.L. 1955, Act 205, the common law action for wrongful death was merged with the statutory action under that section. The narrowness of section 246-2, which caused a contrary ruling in *Gabriel* v. *Margah, supra,* no longer exists. It is the plain intent of section 246-2 that all of the persons enumerated therein shall join in one action and be governed by the provisions of that section, so far as the right to sue for the wrongful death itself is concerned. As to an action under the Survival Act, sec. 246-6, the legislature has provided that on motion of any interested party the actions under sec. 246-2 and sec. 246-6 may be consolidated for trial; so this is an additional safeguard against duplication of damages.

In the present case, however, the action is solely under the survival statute and not for the entire damages. The action of the parents themselves has been brought in the federal court. The effect of separate trials of the two actions may have to be considered depending upon the outcome of the case. We note that in Pennsylvania the actions generally are consolidated, and while separate verdicts are rendered the tendency is to review the total of the two, as illustrated by *Spangler* v. *Helm's New York-Pittsburgh Motor Express, supra, Tuttle* v. *Suznevich,* 394 Pa. 614, 149 A.2d 888, 892. When the actions are separately tried no such indulgence can be shown.

This brings us to defendants' further contention as to the speculative nature of the damages in this case of a four-year old child. We recognize that the damages are highly speculative in this case. They are based on earning capacity and other facets of a life still new and unformed. However, by the great weight of authority, that is not a reason for denying such damages altogether. *Cox* v.

*Remillard,* 237 F.2d 909 (9th Cir.) ; Annot., 149 A.L.R. 234, 14 A.L.R.2d 485. The matter is one that a reviewing court can control, as explained in *Alleva* v. *Porter,* 184 Pa. Super. 335, 134 A.2d 501, citing the well-considered dissenting opinion in *Gibson* v. *Hallacher,* 176 Pa. Super. 539, 107 A.2d 449 ; *Florida East Coast Ry.* v. *Hayes, supra; Miami Dairy Farms, Inc.* v. *Tinsley,* 115 Fla. 650, 155 So. 850; *id.* 121 Fla. 780, 164 So. 530.

The complaint alleges that "a right of action has accrued in favor of the plaintiff, as legal representative of the said deceased, to recover * * * for the earnings which he would have received during his life expectancy after attaining the age of twenty years * * *." The right of recovery, however, is not for the earnings but for the present worth of the excess earnings. An administrator, in a case such as this, will have the burden of establishing that there would have been such excess and the amount thereof ; it will not be sufficient to show a gross amount and leave to the defendant the task of showing the amount to be deducted. See *Wada* v. *Associated Oil Co.,* 27 Haw. 671 (1924). Our judgment reversing the dismissal of the action is not to be taken as an approval of the allegations of damages as well pleaded.

Plaintiff further avers that under the survival statute he has "a right of action * * * to recover for the pain and suffering of the plaintiff's intestate prior to his death." According to other allegations of the complaint, plaintiff's intestate "fell into the aforesaid water hole and subsequently, on said same day, drowned." Defendants argue that this is "a simple allegation of death by drowning" and that as a matter of law "such a death is regarded as so instantaneous or contemporaneous as to accord no right of recovery for pain and suffering which survives," citing *Barton* v. *Brown* (also cited *sub nom The Corsair*), 145 U.S. 335, and other cases.

It is necessary to distinguish between two propositions, both of which have affected the decisions on this point as very well explained in *St. Louis, Iron Mountain & So. Ry. v. Dawson,* 68 Ark. 1, 56 S.W. 46. The first proposition is that pain and suffering, when substantially contemporaneous with death, are in law a mere incident of death and not a ground of recovery. This proposition we already have rejected. It is the basis of the Massachusetts cases cited in *The Corsair, supra.* On the reasoning of those cases a right of action cannot survive unless decedent lived long enough to have become entitled to such right. The same line of reasoning explains *Beach v. City of St. Joseph,* 192 Mich. 296, 158 N.W. 1045, *Fike v. Peters,* 175 Okla. 334, 52 P.2d 700, and *Cheatham v. Red River Line,* 56 Fed. 248 (E.D. La.), *rev'd on other points* 60 Fed. 517. Under our holding, *supra,* such cases are not material.

However, a second proposition has been urged, and that is that the damages are too conjectural to be permitted to go to the jury. That was the ruling in *Kennedy v. Standard Sugar Refinery,* 125 Mass. 90, in which the plaintiff's intestate lived thirty-six hours after the accident, so that the cause of action survived even under the Massachusetts rule, but the verdict was set aside because the judge instructed the jury that damages might be awarded "for mental or other suffering endured by the intestate from the time he fell until he struck the ground," a fall of twenty feet. In that case the evidence showed that the intestate became unconscious upon striking the ground, and it was held that though the suffering endured during the fall might perhaps be recoverable as an abstract proposition, nothing could be recovered on this account because plaintiff "could not furnish and did not furnish any proof as to his mental condition during the fall. Whether he suffered any mental terror or distress is purely a matter of conjecture." See also *Mulchahey* v.

*Washburn Car Wheel Co.*, 145 Mass. 281, 14 N.E. 106;
*Smiel* v. *United States*, 147 F. Supp. 835; *Todd* v. *New Amsterdam Cas. Co.*, 52 So. 2d 880 (La. App.).

Alluding to this problem the court in *St. Louis, Iron Mountain & So. Ry.* v. *Dawson, supra,* set aside the verdict as not supported by the evidence "for no appreciable interval of conscious suffering was proved, or, if any was proved, it is not shown to have extended beyond a moment." See also *Brundrett* v. *Hargrove,* 204 Ark. 258, 161 S.W.2d 762. In *Chicago, R.I. & R. Ry.* v. *Owens,* 78 Okla. 50, 186 Pac. 1092, it was held error to submit to the jury the matter of damages for pain and suffering when the amended petition failed to allege conscious pain and suffering as a fact.

Turning to cases of death by drowning and considering the second proposition above stated, we find that a recovery for the pain and suffering is not beyond the bounds of possibility. See *Soule* v. *New York & New Haven R.R.,* 24 Conn. 575; *Clark* v. *Manchester,* 64 N.H. 471, 13 Atl. 867. The case last cited is a strong one for the plaintiff, but we are not prepared to accept it altogether at this time. Our ruling is that the question of damages for pain and suffering should be viewed as one of fact. The jury must determine whether and to what extent conscious pain and suffering were sustained. How much evidence is required and how much may be left to conjecture we prefer not to say at this stage of the case.

However, on the general question of survival of the cause of action, we wholeheartedly agree with the statement in *Clark* v. *Manchester* that:

"* * * Accurately speaking, there is no such thing in any case as death happening simultaneously with the injury causing it, and still less in cases of drowning * * *."

That death never is simultaneous with the injury causing

it—that there always is a fraction of a moment, however immeasurable, before death results—is the very reason why we have rejected the Massachusetts rule and have concluded that even in the case of so-called instantaneous death the injured person has a cause of action that survives his death.

Reversed and remanded for further proceedings consistent with this opinion.

*F. W. Rohlfing* (*Moore, Torkildson & Rice* on the briefs) for appellant.

*Morris P. Skinner* for appellees.

OPINION OF CASSIDY, J., WITH WHOM THE CHIEF JUSTICE JOINS, CONCURRING IN PART AND DISSENTING IN PART.

The amended complaint in this action alleges that on March 19, 1958, plaintiff's intestate, a 4-year-old child, fell into an open water-filled ditch negligently maintained by the defendants, and "subsequently, on the same day, drowned." Damages prayed for in stated amounts respectively are: (1) "For pain and suffering by the deceased prior to his death;" and (2) "For the earnings which he would have received during his life expectancy after attaining the age of twenty years."

The lower court granted the defendants' motion to dismiss for failure of the complaint to state a claim upon which relief could be granted. The court concluded:

"Sec. 246-6, RLH 1955 was not intended to apply to a case where death is instantaneous or so nearly so as to be in law treated as an instantaneous death. Compare Barton v. Brown, 145 U.S. 335, at page 348. In that situation only the wrongful death statute applies. (Sec. 246-2, RLH 1955)."

In reversing, the majority of this court holds that where the death of a person is caused by the negligence

of another, the personal representative of the decedent may maintain an action with the right to recover damages not only for pain and suffering but also for the present value of what has been termed "excess earnings," being a portion of the earnings the decedent could have been expected to receive but for his untimely death.

I agree with the court's determination that where, as is alleged in this case, death is caused by drowning resulting from another's negligence, the decedent's estate may recover damages for pain and suffering if, and to the extent, the decedent's personal representative is able to substantiate as a matter of fact that the decedent was subjected to pain and suffering. However, with all deference, I am unable to agree that the law recognizes a right of recovery in favor of the estate for damages in any manner predicated on estimated earnings of the decedent projected beyond the date of his death.

As is readily apparent from the court's opinion, the issue on which I differ with the majority has vexed the courts in many jurisdictions. There is considerable difference in the rationale underlying the decisions on the subject. This may be attributed to a good extent to the difference in the particular statutes involved, but the holdings of the courts, regardless of their reasoning, seem, with few exceptions, to point to and reach the same result. It is my opinion from an over-all review of the cases that the weight of authority and better reasoning deny recovery of damages by an estate for projected post-mortem earnings of the decedent, and I think this result is particularly supported and called for where a survival statute comparable to § 246-6 is complemented by a wrongful death statute such as we have in § 246-2.

Section 246-6 does not create any new cause of action. It is a survival statute pure and simple. Its only effect is to remove the previously existing common law bar to

suit under the rule *actio personalis moritur cum persona.* When § 246-6 is invoked, only such cause of action as the decedent himself had at the time of his death may be sued on by his personal representative. This means only such cause of action as the law recognized at the time of the enactment of the statute. The cause of action must exist independent of § 246-6. The plain wording and obvious purpose of the section do not permit any statement contained in a legislative committee report to cast doubt on this construction. *Cf., Farrington* v. *Stoddard,* 1 Cir., 115 F.2d 96, 100.

I am persuaded that *Krakowski* v. *The Aurora, Elgin & Chicago R.R.,* 167 Ill. App. 469, is sound and is representative of the majority view in this country in its holding that a person whose life would be shortened by injury is not entitled to recover damages "for any earnings he might be supposed to make, if living, in that part of his life lost by reason of his injuries." (pp. 472-473.)

The *Krakowski* case involved an action brought by the injured party while alive. But the basic principle of the case is soundly applied in a jurisdiction having a wrongful death statute where the action is brought under a survival statute by the personal representative of a decedent who died as a result of injuries inflicted by the tortfeasor. Illustrating this type of case is *Hindmarsh* v. *Sulpho Saline Bath Co.,* 108 Neb. 168, 187 N.W. 806. In a well considered opinion the court rules, at p. 809:

"Where the remedies are held to be concurrent, and we take it they are concurrent in this state, the recovery in the revived action must be limited to such as the deceased might have recovered, had he lived, but not extending beyond the time of his death."

In *Gochenour* v. *St. Louis San Francisco Ry.,* 205 Okl. 594, 239 P.2d 769, the same conclusion is stated at pp. 770-771, as follows:

"Plaintiff properly assumes that under 12 O.S.A. § 1053, there is created a new cause of action for wrongful death separate and distinct from the cause of action accruing to the injured person during his lifetime for injuries to his person, and that the latter cause of action, by virtue of 12 O.S.A. § 1051, survives the death of the injured person and may also be maintained by his personal representatives. *The damages to the injured person's estate begin with the wrong and cease with his death. The damage to the surviving widow and child begin with and flow from the death of the injured person.*" (Emphasis added.)

Unlike the majority, I find the approach and answer to the problem given in *Allen* v. *Burdette,* 139 Ohio St. 208, 39 N.E.2d 153, also persuasive. In holding that the right of recovery passing to the decedent's personal representative under a survival statute did not extend to loss of earnings projected beyond the time of decedent's death, the court states in that case, at p. 154:

"The ground upon which evidence of prospective earnings of the deceased was sought to be introduced was that, if an action based upon a claim of permanent injuries had been instituted by the person injured, evidence would have been admissible to show his probable length of life and thereby furnish a basis of computation of the loss resulting from his inability to work and earn money from the time of his injury to the probable time of his death. However, a complete answer to this proffer of evidence is that, while it tends to show the probable length of life and the estimated time of death, it has no place in this case, for the actual time of death is established and it becomes unnecessary to deal in probabilities. Where death has actually occurred, the theory of prospective damages included in such survival claim has no place whatever.

Mortality tables are competent because they are regarded as the best evidence of life expectancy; but they have no applicability and their competency therefore disappears when there is no expectancy of life to calculate. Fact had been substituted for prophecy. Death is not a matter of the future; it had already occurred. What had been uncertain and speculative became definite and certain; what had been unknown became known. The loss sustained by an injured person accrues at the time of his death, and it is the wrongful death which gives rise to a cause of action on behalf of the designated next of kin.

*"It must be concluded, therefore, that in the survivor action recovery by the administrator is limited to such damages as the deceased might have recovered had he lived, but for no loss of earnings extending beyond the time of his death."* (Emphasis added.)

See also *Ellis* v. *Brown,* Fla., 77 So. 2d 845; *Richmond Gas Co.* v. *Baker,* 146 Ind. 600, 45 N.E. 1049; *St. Louis & S. F. R. Co.* v. *Goode,* 42 Okl. 784, 142 Pac. 1185; *O'Leary* v. *United States Lines Co.,* D. Mass., 111 F. Supp. 745; *Farrington* v. *Stoddard, supra.*

It is argued however that any rule which denies an estate the right to recover damages based on earnings for the decedent's lost years is a harsh one in that it permits the wrongdoer by the excessiveness of his own tort to escape paying full compensation for the injury caused by him. There should be two sides to this proposition. It is not difficult to understand how sentiment could be mustered to favor extending the right of recovery where only a survival action is available or where the wrongful death statute is restricted, even though it should be apparent that, logically analyzed, any such extension would actually be punitive for the wrong committed while, inconsistently, the damages allowed would be admeasured

without regard to the degree of culpability. It seems to me, however, that where there is concurrently available a right of recovery in dependents and next of kin under a liberal wrongful death act, then, if the matter is to be determined on a basis of fairness to all parties, it is quite necessary in order to avoid duplication of damages and the unjustified consequences thereby imposed on the tort-feasor that the separate areas of recovery in each of the two permitted actions be clearly demarcated.

Section 246-6 was enacted by Act 205, S.L. 1955. The same act amended the wrongful death act (now § 246-2) to make it much more comprehensive than it had been, so much so that, as the majority states, "the common law action for wrongful death was merged with the statutory action under that section." The rights of action under § 246-2 and under § 246-6 are independent and may be concurrently pursued. Under these circumstances, it is my conviction that the rule should be approved and adopted which denies the right in a survival action to recover damages based on an estimate of earnings beyond the date of decedent's death. That we would be but following the authorities generally in doing so is indicated in the annotation appearing in 42 A.L.R. 187, in which the author states, at p. 188:

"* * * Where, however, the remedy by revival of the pending action is not exclusive, but there also exists a right of action in behalf of certain designated persons to recover compensation for their pecuniary loss, a large element of which is loss of support, it is generally held that the injured person's earning capacity from the time of his death for the period of his life expectancy is to be the basis for assessing compensation for loss of support; hence, in the revived action, compensation for impaired or destroyed earning capacity is limited to the period of time intervening

between the injury and the death. This seems to be necessary if double damages are to be avoided."

I do not think that consideration of *Kake* v. *Horton*, 2 Haw. 209, and the modern English decisions referred to and relied on in the court's opinion requires or supports a different holding.

In *Kake* v. *Horton* the court ruled that a widow could recover consequential damages resulting from the death of her husband through another's fault. In making this ruling the court refused to follow the common law principle that an action would not lie in favor of one spouse for the wrongful death of the other spouse, established by *Baker* v. *Bolton*, 1 Campbell's Reports 494. The court that decided *Kake* v. *Horton* was unfettered by the common law. It was not only authorized, but was required by statute (C.C. 1859, § 14, quoted in the margin[1]) to decide civil cases in the absence of express law according to equity and the court's understanding of natural law and to apply necessary remedies to evils that are not specifically contemplated by law.

In deciding this case we are not as unfettered as the court was in deciding *Kake* v. *Horton*. The great freedom of judgment and action permitted the judiciary under the 1859 Code was removed in 1892 by the enactment in place of § 14 of the more restrictive provisions now appearing as R.L.H. 1955, § 1-1, which in pertinent part read:

"The common law of England, as ascertained by English and American decisions, is declared to be the common law of the [State] of Hawaii in all cases,

---

[1] § 14. The Judges have equitable as well as legal jurisdiction, and in all civil matters, where there is no express law, they are bound to proceed and decide according to equity, applying necessary remedies to evils that are not specifically contemplated by law, and conserving the cause of morals and good conscience. To decide equitably, an appeal is to be made to natural law and reason, or to received usage, and resort may also be had to the laws and usages of other countries.

except as * * * fixed by Hawaiian judicial precedent."

It should be apparent from the authorities referred to in the forepart of this opinion that it cannot be said the common law of England, as ascertained by American decisions, has recognized the right of recovery under consideration. It is certain that no such right of recovery can be founded on the English decisions.

From the cases referred to in the court's opinion, it is seen that under the present English law an injury wrongfully inflicted on a person which shortens his life gives rise to special damages for the shortening of life.

As paraphrased in the prevailing opinion, it was held in *Flint* v. *Lovell*, (1935) 1 K.B. 354, that an individual injured by the wrongful act of another has a right of action not only "for mental disquietude through the prospect of an early death, but also for the substantial shortening of his life shown by medical testimony to be a reasonable certainty." This case was approved in a survival action in *Rose* v. *Ford*, (1937) 137 A.C. 826, and was made applicable to a simultaneous death in *Morgan* v. *Scoulding*, (1938) 1 K.B. 786. In *Benham* v. *Gambling*, (1941) A.C. 157, the rule allowing damages for early death was applied to a child dying on the same day of the accident causing his death. However, as the majority recognizes, none of these cases supports or affords a basis for the proposition that the injured person, during his lifetime, or his estate after his death, has a right of action for loss of earnings cut off by death. In *Benham* v. *Gambling, supra,* Viscount Simon (L.C.), speaking for and with the concurrence of the other members of the court, makes it clear that the English rule does not include damages based on estimated earnings for the years cut off by the injured person's death. At p. 167 of the opinion it is stated:

"* * * As Lord Wright said in *Rose* v. *Ford* (I)

special cases suggest themselves where the termination of a life of constant pain and suffering cannot be regarded as inflicting injury, or at any rate as inflicting the same injury as in more normal cases. I would further lay it down that, in assessing damages for this purpose, the question is not whether the deceased had the capacity or ability to appreciate that his further life on earth would bring him happiness; the test is not subjective and the right sum to award depends on an objective estimate of what kind of future on earth the victim might have enjoyed, whether he had justly estimated that future or not. *Of course, no regard must be had to financial losses or gains during the period of which the victim has been deprived. The damages are in respect of loss of life, not of loss of future pecuniary prospects."* (Emphasis added.)

Further, the English decisions, even to the limited extent they permit enhancement of damages by reason of the shortening of the injured person's life, have not met with approval or acceptance in this country. Pointing out the difficulties and dissatisfaction the English courts have experienced in applying their rule, the court in *Rhone* v. *Fisher,* Ct. App., 224 Md. 223, 167 A.2d 773, states at pp. 777 and 778:

"The experience of the English courts with the rule and the virtual emasculation thereof which has evolved from that experience, as well as the rather ephemeral considerations which must be taken into account under it, and also the possible duplication or overlapping of compensation under this and other heads of damages (a possibility which Roche, L. J. thought had become in large part an actuality in Flint v. Lovell, supra) do not commend the English rule to us as one for adoption in this State.

"We find no compelling ground for adopting this new rule of damages which is at variance with what seems to have been long accepted here. Though we think it true that this is the first case in which this court has been directly asked to adopt lost years of life expectancy as a separate element of damages in a negligence case, that very fact suggests that the law has long been considered to be otherwise."

See also *O'Leary* v. *United States Lines Co., supra; Farrington* v. *Stoddard, supra.*

Since the right to recover damages for loss of earnings attributable to the decedent's lost years cannot be sustained under the common law as ascertained by English and American decisions, the only other basis for sustaining the right of recovery would have to be that such a right has been "fixed by Hawaiian judicial precedent." This means, as I analyze our problem, that *Kake* v. *Horton, supra,* relied on by the majority, would in itself practically have to sustain the right of recovery. And in my opinion the case cannot carry the load assigned to it.

In declining to follow the common law rule that the death of a human being could not be complained of, established by *Baker* v. *Bolton, supra,* the court in *Kake* v. *Horton* held that a widow has a legal right to complain and to be redressed for injuries resulting to her by the tortiously caused death of her husband. The cause of action so recognized rested on the close relationship between the claimant and the decedent. The principle established by the case applies to cases in which such a relationship exists. I view the existence of the close relationship as an essential element of the principle underlying the cause of action sustained in *Kake* v. *Horton.*

In *Ferreira* v. *Honolulu R. T. & L. Co.,* 16 Haw. 615, the court applied the principle established by *Kake* v. *Horton* to allow recovery by a father for the injury suf-

fered by him by reason of the death of a son. In that case the concept of a relationship with the decedent being basic to recovery is reflected in the statement of the court, at p. 628, as follows:

"There was no error in refusing to direct a verdict requested for the defendant on the ground that an action cannot be maintained in this Territory by a father for the death of a minor child. *Kake* v. *Horton*, 2 Haw. 209; *Puuku* v. *Kaleleku*, 8 Haw. 80; *Kekauoha* v. *Sch. Robert Lewers Co.*, 1 Estee 75; 114 Fed. 849. It is true that in the cases cited the actions were by widows for the deaths of their husbands, but the reasoning upon which the decisions were based is equally applicable to actions by parents for the deaths of their children."

That the principle in *Kake* v. *Horton* limits recovery to one standing in a particular relationship to decedent is, I think, quite clearly indicated in *Gabriel* v. *Margah*, 37 Haw. 571, by the statement of the court at p. 577, as follows:

"* * * Hence it may be said that the cause of the action adopted in the *Kake* case and applied in that case to the relation of husband and wife, and in the *Ferreira* case to the relation of parent and minor child, is based upon the statutory legal incidents of the relation pre-existing between the plaintiff and the deceased and the reciprocal legal rights and duties of the parties attached to such relation."

In accordance with the foregoing, I dissent from the holding of the court that the complaint in this case states a claim for recovery of damages predicated on expected earnings of the deceased child. I concur in the reversal of the order dismissing the complaint on the limited grounds that the complaint is sufficient to allow the plaintiff an opportunity to establish pain and suffering as a matter of fact.